UNITED STATES, Appellee

v

CALVIN T. ALLEN, Private E–2, U. S. Army, Appellant

8 USCMA 504, 25 CMR 8

No. 9632

Decided December 20, 1957

 ▬

*Major Edward R. Fenig* argued the cause for Appellant, Accused.
*Major Thomas J. Nichols* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Thomas J. Newton.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

This appeal raises an important question regarding the adequacy of the accused's representation by his appointed defense counsel.

The accused went absent without leave on January 4, 1956. He remained absent until apprehended September 15, 1956. Thereafter, he was charged with desertion, in violation of Article 85, Uniform Code of Military Justice, 10 USC § 885. Before the case came up for trial, the appointed defense counsel negotiated for, and the accused entered into, an agreement with the convening authority. This agreement provided that the accused would enter a plea of guilty, and if the court members adjudged a severe sentence the convening authority would approve no more than a dishonorable discharge, total forfeitures, and confinement at hard labor for eighteen months.

At the trial, the accused entered a plea of guilty and the court returned findings of guilty of the offense charged. During the sentence procedure, trial counsel followed the usual practice and read from the first page of the charge sheet the personal information concerning the accused. The principal recitals are to the effect that the accused is 30 years old; that he had six years prior satisfactory military service; and that he had been in confinement before the trial for over two months. There was no evidence of previous convictions. The law officer advised the accused of his right to present evidence in mitigation or to make an unsworn statement. After consulting with defense counsel, the accused said that he desired to remain silent. Defense counsel made no statement and offered no argument on the accused's behalf. The law officer then instructed the court members on the maximum punishment, which includes confinement at hard labor for three years. The court closed to deliberate on the sentence. However, as the law officer and the trial personnel were withdrawing from the courtroom, they were summoned by the president. The court was reopened, and the president requested a copy of the "data which the trial counsel just read." The information from the charge sheet was reread to the court members. Again defense counsel remained silent. After deliberating for eight minutes the court reopened and announced that it had sentenced the accused to a dishonorable discharge, total forfeitures and confinement at hard labor for two years.

In his post-trial review the convening authority's staff judge advocate set out a number of other matters relating to the accused. These include the following: that the accused is married and has two children, a daughter four years of age and a son eight months old; that there is no evidence of civilian "crim-

506

inal arrest or convictions"; that the accused had no previous conviction during his entire service in the Army; that he had "no time lost" under the provisions of 10 USC § 1579 (now § 3638); and that his last service rating was excellent in both conduct and efficiency. The staff judge advocate recommended that the dishonorable discharge be suspended to give the accused "the opportunity to earn restoration to duty." Pursuant to the pre-trial agreement, the convening authority reduced the period of confinement to one and one-half years; and, in accordance with his staff judge advocate's recommendation, suspended the execution of the discharge for the term of confinement or the completion of appellate review, whichever is later. A board of review affirmed the findings of guilty and the sentence, without opinion.

On this appeal, the accused contends that he was deprived of the effective assistance of counsel during the sentence procedure because of the complete inaction of his defense counsel. In an affidavit in support of his contention, he makes the following allegations:

"That, prior to the commission of the alledged offense he was notified that his wife was pregnant; that she was not in a position to support herself and that he absented himself in an effort to support her after attempts to obtain assistance from the American Red Cross and the Army Emergency Relief had failed.

"That, in addition, he requested furlough from his organization commander for the purpose of assisting his wife and was refused.

"That, the trial defense counsel was aware of these facts and failed to present them to the court.

"Further, that, the wife was available and desired to be called as a witness in behalf of the accused and that the trial defense counsel failed to call her."

Under the Uniform Code of Military Justice the accused's guilt and sentence must be determined by the court-martial. To avoid the strain and the problems of a trial on the merits, the ac-cused can plead guilty. If he enters into a pretrial agreement in regard to his plea with the convening authority, the agreement cannot transform the trial into an empty ritual. See United States v Peterson, 8 USCMA 241, 24 CMR 51; United States v Hinton, 8 USCMA 39, 41, 23 CMR 263. True, the plea disposes of the necessity for the presentation of evidence of guilt and it eliminates the requirement of formal instructions to the court-martial. United States v Lucas, 1 USCMA 19, 1 CMR 19. But there is still the vital question of sentence. Speaking of the importance of this question, we said in United States v Brasher, 2 USCMA 50, 52, 6 CMR 50: "In a special and peculiar sense the sentence of the law for adjudged misconduct . . . is the product of a trial court. It alone, of all agencies of the law, is authorized to 'adjudge' the law's penalty."

The sentence proceeding is an integral part of the court-martial trial. United States v Strand, 6 USCMA 297, 306, 20 CMR 13. Plainly, therefore, counsel's duty to represent the accused does not end with the findings. Remaining for determination is the question of the accused's liberty, property, social standing—in fact, his whole future. And his lawyer is charged with the substantial responsibility of appealing on his behalf to the conscience of the court.

No hard and fast rule can be promulgated to test the sufficiency of the discharge of counsel's responsibilities. See United States v Hunter, 2 USCMA 37, 6 CMR 37. Sometimes a single action can be sufficient to show ineffective representation. United States v Walker, 3 USCMA 355, 12 CMR 111. On other occasions "cumulative . . . omissions at the trial" will spell out the inadequacy. United States v McMahan, 6 USCMA 709, 723, 21 CMR 31. Each case must be decided on its own facts; and in a given case there may be a legitimate difference of opinion as to the effect of actions or omis-

**507**

sions of counsel in his representation of the accused.

Some of the matters in mitigation which apparently were available but not presented have already ▓▓▓▓ ▮ been mentioned. The accused has set out others in his affidavit. If these recitals were undisputed we would be compelled to "wonder how any counsel could . . . [have done] less for his client." United States v Parker, 6 USCMA 75, 86, 19 CMR 201. Consequently, despite our certainty as to defense counsel's good faith, we cannot overlook the damaging effect of his omissions. Whatever practical comforts he may have drawn from the preliminary agreement with the convening authority, defense counsel did not provide the court-martial with anything from which it could determine a just sentence. Neither did he provide anything from which a board of review could reach an informed judgment as to the appropriateness of the sentence affirmed by the convening authority. In reviewing the sentence, the board of review "can be compassionate; it can be lenient; it can be forbearing," but it can act only on the basis of what it finds in the record. United States v Lanford, 6 USCMA 371, 378, 20 CMR 87. If there is nothing of substance in the record, there is little that the board of review can do to carry out its responsibility.

However, the accused's contentions in regard to the mitigating circumstances are not undisputed. The accused's former counsel, whose competency is now drawn in question, has filed an affidavit in which he maintains that he examined the accused's background and determined that "making any reference to the past service and family conditions of the accused, would either work to the utmost disadvantage of the accused or would result in the deliberate perpetration of a fraud upon the court." If the facts are actually as counsel indicates them to be, then it can properly be said that the accused and his counsel decided advisedly to make no statement and to take a chance on the sentence.

Manifestly, the question before us is one of grave importance to both the accused and his former counsel. We cannot choose arbitrarily between one or the other of their conflicting allegations. Moreover, their affidavits are insufficient for a truly informed judgment. A hearing on the matter should be held, and sworn testimony should be obtained. In civilian jurisdictions, a hearing of this nature would normally be held by the trial judge. In the military, the law officer acts substantially as a trial judge, but his authority is limited to the particular court-martial to which he is assigned. Hence he is not in a position to act. However, a board of review is qualified to act in the premises. It is composed of legally trained persons and it is invested with fact-finding powers. Article 66, Uniform Code of Military Justice, 10 USC § 866. Accordingly, we return the record of trial to The Judge Advocate General for submission to the board of review to hear and determine the matter in dispute. Since a charge of incompetency of the kind ▓▓▓▓▓ ▮ alleged in this case constitutes a waiver of the attorney-client privilege, the accused's former counsel can testify at the hearing to conversations with the accused. Hunt v Blackburn, 128 US 464, 9 S Ct 125, 32 L ed 488; United States v Monti, 100 F Supp 209 (ED NY); Hyde v State, 70 Ga App 823, 29 SE2d 820; Rodriguez v State, 130 Tex Crim 438, 94 SW2d 476; Everett v Everett, 319 Mich 475, 29 NW2d 919, 922. Upon the decision of the board of review, further proceedings in the case may be had in accordance with Article 67(b)(2), (3), Uniform Code of Military Justice, 10 USC § 867.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

As I indicated in United States v Walters, 4 USCMA 617, 16 CMR 191, there are several methods of reaching an assertion by the accused that he has been denied a fair trial because of incidents not reflected in the record of trial. In that early case I preferred requiring an accused to proceed by a motion for new trial for that procedure

offered an effective method of gathering the true facts. I there went on to suggest this manner of reaching the heart of the problem. If an issue is initiated by affidavit at this appellate level in support of a petition for a new trial and there is a joinder of that issue by counter-affidavit, this Court could weigh the facts and determine the merits of the controversy. In such a situation, I outlined the following method as appropriate:

"We are not without power to consider the merits of this controversy and I can find a well-accepted and legal method of considering the documents. There are certain well-recognized legal means by which issues can be framed. If this same issue were not raised until the case had reached the board of review or this Court, it would be incumbent upon counsel for the accused to file a petition for a new trial supported by affidavits. Counsel for the Government would be afforded an opportunity to file counter-affidavits and the board of review or this Court could proceed by one of two methods. If the petition and affidavits on their face failed to show that the petitioner was entitled to any relief, then the petition could be denied. On the other hand, if they were sufficient or either party desired to present further evidence, steps could be taken to see it was obtained. That process permits the framing of issues, the taking of testimony, and it affords each party an opportunity to be heard. If necessary, a factual determination could be made and a decision reached."

I could not convince a majority of the Court that the accused should be required to proceed by a petition for new trial and because in subsequent cases recognition was being given to a procedure which permitted the raising of factual questions for the first time before this Court, in United States v Johnson, 8 USCMA 173, 23 CMR 397, I proposed the following:

"The net of my views is that I prefer to support a procedure of the following sort. If an issue depending on facts arises after trial and is raised for the first time on appeal, the court or agency which is hearing the appeal should follow a recognized procedure whereby facts can be gathered, reconciled, and weighed. If the error is raised before us and supported by an initiatory affidavit, a well-recognized method is available. If the facts are sworn to under oath or by certificate and not challenged, they may be accepted as true. For the most part, the facts in the original affidavit will not be controverted. However, if they are disputed by counter-affidavit, then we can have the facts heard by a court-appointed referee, or we can return the proceedings to an appropriate reviewing agency which has fact-finding powers. In the event the matter is raised before the convening authority or the board of review, they can determine the facts as an original matter. Under some type of proceedings such as suggested, we would have some assurance that we know whereof we speak. Under our present muddled appellate procedure, contrary to the rule prevalent in most jurisdictions, we presume prejudicial error instead of placing the burden on the moving party and finding out the true facts."

In this case, the accused's petition for review to this Court leveled the charge of inadequate representation by trial defense counsel in the sentence phase of his trial. A statement was made in the petition that accused was aggrieved by failure of his counsel to argue in support of a lenient sentence but no facts were alleged under oath. Trial defense counsel came forward with an affidavit and the petitioner then filed a counter-affidavit. In his appellate brief, accused sought a setting aside of and a rehearing upon his sentence. Consolidating these various papers, they may be fitted roughly into the procedural pattern I mentioned in the last cited case. Therefore, I am not adverse to a procedure of referring disputed factual issues raised by petitions and affidavits to a board of review to gather the facts and make prelim-

509

inary findings as a referee for the Court. However, I call attention to the fact that we are affording an accused an extraordinary remedy, and before he should be entitled to that sort of consideration the entire record, including the petition and initiatory affidavits, must make a substantial showing of a denial of due process of law. In the case at bar, when I accept petitioner's allegations at their face value, I find them insufficient to raise the issue of ineffective trial representation, and I cannot support a concept that a board of review should be burdened with this extracurricular activity unless there is a preliminary showing that the accused was denied the effective representation by counsel as those terms have been interpreted by civilian tribunals and this Court. Certainly, I can see no reason for a determination of factual issues when the contentions advanced show no more than well-known complaints of losing litigants, mere irregularities, errors of judgment, questionable trial tactics, or doubtful strategy. Lawyers are human and mistakes will occur and litigation will be interminable if every slip in the course of a trial is made the base for a reversal on appeal. Long ago we set the standards to support these last stand charges hurled at lawyers by accused who find themselves serving time in Federal institutions for offenses they have committed. In United States v Hunter, 2 USCMA 37, 41, 6 CMR 37, we said:

"After appointment of counsel, as required by the Code, an accused, if he contends his rights have not been fully protected, must reasonably show that the proceedings by which he was convicted were so erroneous as to constitute a ridiculous and empty gesture, or were so tainted with negligence or wrongful motives on the part of his counsel as to manifest a complete absence of judicial character. See Diggs v Welch, 148 F2d 667 (CA DC Cir). This principle must be strictly adhered to, else every unsuccessful representation would be urged as a basis for reversal. Few trials are free from errors of judgment on the part of counsel and there are no standards in a record by which we can measure some of the claimed errors. Many records reflect examples of doubtful trial tactics but counsel cannot be censured for not adopting the best. It must be remembered that appellate counsel and this Court have the advantage of viewing the record after the findings and verdict, and when the decisions made in the conduct of the trial may be distorted by our lack of the knowledge possessed by trial counsel."

Unless that principle is to be overturned, the sentence in this case should be affirmed. As previously mentioned, the record discloses that the alleged inadequacy is founded on the contention that trial defense counsel failed to present certain evidence in mitigation and failed to argue on the sentence. To reach that question, the Court considers matters found in the allied papers and the staff judge advocate's review. For the purposes of this case, I will assume those matters are before us for consideration, but it must be remembered that entirely missing from the files are the real factors influencing the decision to rely solely on the extenuating circumstances presented to the court-martial. I need not presume incompetency on the part of counsel and there is a possibility that had he chosen a different course, the accused would have ended up with a longer sentence than was imposed. Of course, it can always be speculated that some benefit might have inured to him but, assuming arguendo that such conjecture approaches reality, at best, the error made by counsel is one of judgment. It may be expecting too much, but I hope that we are not going to regulate the conduct of the trial participants so closely that we view every decision made by defense counsel, his theories of defense, his trial tactics and techniques, and his every act of omission or commission through a microscopic lens. If every time we believe we might have done better we make his conduct the subject of an appellate trial, we, or boards of review as our fact-finding representative, will be faced with a Herculean fact-finding task not necessary to the proper administration of military justice and certainly not contemplated by Congress.

Having made some general observations, I move on to the facts of this case. Taking every favorable fact found in the record, whether before us properly or not, I find that they were either presented to the court-martial, their influential effect was questionable, or had they been presented they might have been subjected to refutation in such a manner that opening up the subject could have been detrimental to the accused.

While debating counsel's good or bad judgment should be unnecessary in this setting, in the interest of showing that his decision not to engage in battle over the sentence was not an egregious error, I analyze some of the alleged mitigating facts. Of the matters set out in the staff judge advocate's review, the most cogent in mitigation was that the accused had no previous conviction during his entire service in the Army. This datum was submitted to the court members since it was contained on the first page of the charge sheet which trial counsel read to the court. As to the fact that accused's last efficiency and character rating was excellent, his last character report was for a period almost a year antedating the absence, and his behavior pattern after that period is entirely unsatisfactory and calls for an entirely different rating. That there was no evidence of a civilian criminal record is a favorable factor, but it might be subject to refutation and certainly it was extremely remote in view of the fact that the accused had for the past seven years been in service. Moreover, the offense here was desertion, and a great many absentees who seek to avoid military service do not offend against other norms of society.

That the accused was thirty years old, married, and the father of two children and the facts alleged in his affidavit, viz., that he departed the service without authorization because his wife was pregnant at the time and could not support herself; that the Red Cross and Army Emergency Relief had refused him aid; that he had requested a furlough from his commanding officer which was refused; and that his wife was available to testify and not called,

might at first blush offer some good talking points and, in the aggregate, cause the court-martial to be lenient in the imposition of punishment. But, as long as we are looking at allied papers, I pause to mention that counsel may have had a very good reason for preferring to take his chances on silence.

Accused's claim that he was denied furlough to aid his family is contrary to the official records, which show that on November 27, 1955, he was on leave when he was picked up by civilian authorities and that he went absent without leave on the very day he was returned to duty with his unit. Also contrary to official records is the qualified averment found in his affidavit that, to his best recollection, the decision not to argue was made without his knowledge. The record reflects that at trial defense counsel's specific request, the law officer instructed the accused as to his right to offer evidence in extenuation and mitigation. He was told of his rights in the following language:

"LO: Private Allen, you are advised that you may now present evidence in extenuation or mitigation of the offense of which you stand convicted. You may, if you wish, testify under oath as to such matters, or you may remain silent, in which case the court will not draw any inferences from your silence. In addition, you may, if you wish, make an unsworn statement in mitigation or extenuation of the offense of which you stand convicted. This unsworn statement is not evidence, and you can not be cross-examined upon it, but the prosecution may offer evidence to rebut anything contained in the statement. The statement may be oral, or in writing, or both. You may make it, or it may be made by your counsel, or by both of you. Consult with your counsel, and then advise the court what you desire to do."

It is to be noted that he was directed to consult with his counsel. The record affirmatively shows that he did so, that he personally declared he would remain silent, and that upon question by the law officer defense counsel stated the defense had nothing further to offer.

Therefore, two of the allegations made by the accused in his affidavit are rebutted by the official documents found in the allied papers and by the transcript of record and I suspect that had he been impeached on those matters he would have received no consideration from the court-martial. Moreover, his averment that his wife could not support herself may be conceded, but if consideration is given to the fact that had he continued to serve she would have drawn some $136 per month from the Government, it is conceivable she may have suffered less had he remained with the service. Certainly he makes no averment that he was, in fact, supporting his family and it is of some significance that his family was residing in Columbia, Kentucky, while he was apprehended in Cincinnati, Ohio. The accused's allegations that his wife was pregnant, and that the Red Cross and Army Emergency Relief refused him aid and so on, are common arguments made with regard to servicemen who are absent without leave, but they are meager factors when measured in the scales with desertion. Particularly might that be true when, as here, the accused had some eight months between the time of the child's birth and his apprehension to return to his unit.

The foregoing possibilities are mentioned, not for the purpose of damning the accused but for the sole aim of casting doubt on the assertion that because the defense counsel chose one method of representing his client we should subject his exercise of discretion to a full scale review at this level.

· Because it is easy and not unusual for an accused to level a charge of incompetency at his trial counsel, most appellate courts require one convicted of an offense to show affirmatively something more than a failure on the part of his counsel to use different tactics. We have imposed rather positive requirements in that regard as may be noticed from our language in United States v Soukup, 2 USCMA 141, 7 CMR 17. There the late Judge Brosman, in speaking for a unanimous court, had this to say:

"Appellant defense counsel next contends that accused was deprived of his right to the *effective* assistance of counsel. In support of this assertion, he approaches the matter negatively and points to many actions defense counsel did not take during the course of the trial. In the last analysis, his argument simply invites a trial at this level, not of the accused, but of the professional judgment and capacity of his counsel. We cannot possibly accept the invitation. Defense counsel at the trial was duly appointed and certified as qualified under the Code, Article 27(b), 50 USC § 591. We do not regard it as necessarily significant that he did not manifest febrile activity at the court-martial hearing—for what counsel may do in such a setting may vary inversely with the strength of the prosecution's case and the soundness of its presentation."

In the case at bar the accused points out one act of omission but when all is said and done I suggest that we measure counsel's failure by the results he accomplished. The accused does not advance the usual claim that he had periodic desires to return to the service, and well he could not for he judicially confessed to an intent never to return. In spite of the seriousness of the offense and the attitude of the accused, by prior arrangement defense counsel had obtained assurance that the maximum sentence when finally fixed by the convening authority would not exceed eighteen months' confinement with a dishonorable discharge. The sentence returned by the court-martial was reasonable but defense counsel did not stop there. On the contrary, his subsequent activity resulted in obtaining an unusual recommendation for suspension of the dishonorable discharge and restoration to duty.

The military judicial system is no different from its civilian counterpart in that it is incumbent upon defense counsel to guard the interests of the accused by all honorable and legitimate means. Paragraph 48c, Manual for Courts-Martial, United States, 1951,

512

page 68. His representation does not end with the findings of guilt and, particularly because the court-martial members impose sentences, he is duty-bound to exert his best efforts to lessen the punishment which is to be visited upon his client. United States v Olson, 7 USCMA 242, 22 CMR 32. However, discretion and judgment dictate the tactics to be employed and the procedure to be followed, and the manner in which they are exercised is predicated upon many intangibles not found in the cold words of a record. Second guessing by this Court can only lead to a substitution of our judgment for that of defense counsel and the present disposition is merely the beginning of a trial of defense counsel's professional competency. At best that is a proceeding which should be used sparingly and certainly not on the showing I find in this record.

In my judgment this accused fared well and to grant him a hearing to try his counsel is to give him relief he is not justly entitled to receive.