UNITED STATES, Appellee,

v.

Private (E–1) Terry L. CROSS, 231–94–1077, United States Army, Appellant.

CM 445078.

U.S. Army Court of Military Review.

28 Feb. 1985.

Lieutenant Colonel William P. Heaston, JAGC, Major Lawrence F. Klar, JAGC, and Captain Ann M. Kanamine, JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Captain Thomas E. Booth, JAGC, and Captain Frederick A. Johnson, JAGC, were on the pleadings for appellee.

Before WOLD, NAUGHTON and COHEN, Appellate Military Judges.

OPINION OF THE COURT

NAUGHTON, Judge:

Appellant contends that he was prejudiced by the sentence limitation terms of

the pretrial agreement which were operative only if a punitive discharge was adjudged. In light of *United States v. Castleberry*, 18 M.J. 826 (ACMR 1984), and *United States v. Holmes*, 17 M.J. 830 (ACMR), *pet. denied*, 18 M.J. 438 (CMA 1984), we find this contention to be without merit. Such provisions are not violative of public policy.

The findings of guilty and the sentence are affirmed.

Judge COHEN concurs.[1]

WOLD, Senior Judge, dissenting:

I dissent from my brothers' endorsement of the terms of the pretrial agreement in this case and from their affirmation of the sentence.

The provision of the pretrial agreement which gives rise to our disagreement reads as follows:

[I]n the event no punitive discharge is adjudged, [the convening authority] may approve the entire sentence as adjudged.

My brothers rely on *United States v. Castleberry*, 18 M.J. 826 (ACMR 1984); and *United States v. Holmes*, 17 M.J. 830 (ACMR), *pet. denied*, 18 M.J. 438 (CMA 1984), for the validity of this provision. I find neither case persuasive.

*Holmes* approved a similar agreement, invoking the standard of "basic notions of fundamental fairness," (*United States v. Partin*, 7 M.J. 409 (CMA 1979)), but applying the factors enumerated by Judge Fletcher in *United States v. Dawson*, 10 M.J. 142, 145 (CMA 1981).[2] These are:

(1) "First, what does this clause actually entail?" *Holmes* asserts that the clause in question entails only a sentence limitation, not a limitation on the exercise of any right. I believe this is an overly literal interpretation. The clause informs the accused that he will forfeit the sentence limitation if he successfully exercises his right to present evidence and argument against a punitive discharge. A pretrial agreement which permits only the *unsuccessful* exercise of a right without exacting a penalty strikes me as an agreement which very significantly limits that right.

(2) "Second, what is the purpose of the parties in placing such a provision in a pretrial agreement?" *Holmes* asserts that the purpose of the clause is to give the convening authority greater flexibility in his post-trial action on the sentence. This assertion appears to me to be without evidentiary support—the decision itself cites none—and neither, in my view, is the assertion self-evidently or necessarily true. Without additional evidence I find it impossible to determine the purposes of the parties and therefore impossible to justify the agreement on the basis of this factor. In any event, I read Judge Fletcher's use of the word "purpose" to mean motive rather than intent, since determination of the parties' intent is subsumed in the previous question. The Court of Military Appeals has recently reminded us that motive is irrelevant to the criminality of a given act. *United States v. Kastner*, 17 M.J. 11 (CMA 1983). Similarly, I would not accord the motives of the parties much if any consideration in assessing whether a pretrial agreement violates public policy. To me, the more important concerns are what the agreement actually calls for and how that affects the parties and the military justice system.

(3) "Third, what is its impact on the pretrial agreement as a whole and the guilty pleas induced thereby?" *Holmes* asserts that the impact of the clause is to "facilitate implementation of an appropriate, individualized sentence and an effective command disciplinary program" while simultaneously protecting the accused. It would appear, however, that the clause in question diminishes rather than increases the protection afforded to the accused by the pretrial agreement. Also, what the clause

---

1. Judge Robert E. Cohen took final action on this case prior to his retirement from active service.

2. This test is not controlling precedent, since neither Chief Judge Everett nor Judge Cook joined in this portion of Judge Fletcher's opinion.

contributes toward the "implementation of an appropriate, individualized sentence and an effective command disciplinary program" appears questionable. As far as I can see, the clause's only predictable effect is to discourage evidence and argument against a punitive discharge and thereby increase the likelihood that the sentence adjudged by the court will include a punitive discharge. Whether such a sentence is "appropriate" or "individualized" or "effective" is by definition a matter which varies from case to case. Therefore, *Holmes'* blanket assertion appears to me to beg, rather than answer, these questions.

At bottom, I read *Holmes* as basing its approval of the clause on the premise that the clause could have had no effect on the exercise of appellant's rights. It is true that in certain cases an accused may desire a discharge for his own reasons or may put on evidence calculated to avoid a punitive discharge despite the presence of the clause. It is also true that there are many cases in which neither of these circumstances are present. Therefore, I find *Holmes'* suggestion that the clause cannot in any case operate to chill the exercise of the right to present evidence or argument against a punitive discharge to be logically untenable. If the clause is to be approved, it must be on grounds other than those cited in *Holmes.*

I also find *Castleberry* unpersuasive. *Castleberry* begins by endorsing the rationale in *Holmes,* specifically including *Holmes'* adoption of the absence of "[coercion of] an accused in the exercise of any rights, fundamental or otherwise" as an authoritative test for compliance with public policy. *Castleberry* next concludes that the clause in question may have adversely affected the accused's "ability to argue for a certain type of sentence" and, by implication at least, concedes that the accused "was deprived of the tactic of asking the court-martial to impose lengthy confinement at hard labor but no discharge after having limited such confinement under the terms of the pretrial agreement." 18 M.J. at 829. The conclusion which is dictated by these two premises is that the clause violates public policy. *Castleberry,* however, without recanting either premise, holds that the clause is not "legally infirm."

Long ago the Court of Military Appeals laid to rest the notion that a pretrial agreement detracted in any way from the importance of the independent sentencing function of the court-martial. *United States v. Allen,* 25 C.M.R. 8 (CMA 1957). More recently, that Court has

> admonished defense counsel that, while he may draw "practical comforts" from his knowledge of the terms of a previous agreement with the convening authority, when he goes to court he must do all he can to obtain the court's independent judgement as to what constitutes a fair sentence for the accused.

*United States v. Wood,* 48 C.M.R. 528, 533 (CMA 1974). I believe that this concept is antithetical to the approach adopted by *Castleberry* and by the agreement in question. A duty to "obtain the court's independent judgement as to . . . sentence" despite the existence or the terms of a plea bargain is inconsistent with an agreement which penalizes presentation of evidence or argument which is relevant to the court-martial's independent assessment of the sentence. The latter is what *Castleberry* explicitly, and in my view erroneously, approves.

I am also unpersuaded by *Castleberry's* finding that the insertion of the clause was the product of a voluntary decision by the accused during "fair" negotiations between parties with equal bargaining power. Numerous cases received in this court for review from the jurisdiction in which this case was tried reveal a clear pattern—all pretrial agreements contain the clause. This persuades me that the clause was a standard one which was routinely required by the Government as a prerequisite to any agreement.

Since I can accept neither *Holmes* nor *Castleberry,* I turn to a direct analysis of the issues before us. My review of the cases which address questioned provisions in pretrial agreements persuades me that the law as it now stands contains the following relevant principles.

First, public policy forbids provisions which inhibit or impinge upon the function of the trial court or the appellate courts. Examples include clauses waiving litigation of motions,[3] clauses waiving appellate counsel,[4] and clauses waiving presentation of evidence in extenuation or mitigation.[5] This concept was articulated in *United States v. Allen* in the familiar observation that a pretrial agreement "cannot transform the trial into an empty ritual." 25 C.M.R. at 11. The *Allen* formulation was approved and expanded in *United States v. Cummings*, 38 C.M.R. 174 (CMA 1968), as follows:

> Attempting to make [pretrial agreements] into contractual type documents which forbid the trial of collateral issues and eliminate matters which can and should be considered below, as well as on appeal, substitutes the agreement for the trial and, indeed, renders the latter an empty ritual.

*Id.* at 178. In *United States v. Holland*, 1 M.J. 58 (CMA 1975), the Court quoted the above passages with approval and added the observation that "extrajudicial infringement or interference with the trial and its procedures is forbidden." 1 M.J. at 60.

Second, concessions in pretrial agreements which would otherwise be objectionable on public policy grounds may be rendered acceptable by the circumstance that they are the product of an informed and voluntary choice which originated with the appellant. Examples include waiver of the Article 32, Uniform Code of Military Justice, investigation[6] and waiver of trial before members.[7]

Third, while a provision which is contrary to public policy is therefore void, its presence in a pretrial agreement does not require reversal of the findings or sentence if no prejudice resulted. *Brooks v. United States*, 2 M.J. 1257 (ACMR 1976) and cases cited therein; *see United States v. Hollcraft*, 17 M.J. 1111 (ACMR 1984).

As noted in *Castleberry*, there have been indications in recent years that the current membership of the United States Court of Military Appeals may favor a more liberal attitude toward plea bargains than that which previously prevailed. *See, e.g., United States v. Mitchell*, 15 M.J. 238, 241 (CMA 1983) (Everett, C.J., concurring); *United States v. Kazena*, 11 M.J. 28, 33 (CMA 1981) (Fletcher, J., in lead opinion. Everett, C.J., and Cook, J., concurring in result only). However, such straws in the wind do not authorize us to ignore precedents which have neither been overruled nor distinguished by the Court. In any

---

3. *United States v. Holland,* 1 M.J. 58 (CMA 1975) (waiver of all interlocutory motions by timing of plea); *United States v. Troglin,* 44 C.M.R. 237 (CMA 1972) (waiver of speedy trial and former jeopardy motions); *United States v. Cummings,* 38 C.M.R. 174 (CMA 1968) (waiver of speedy trial motion); *United States v. Schaffer,* 46 C.M.R. 1089 (ACMR 1973) (waiver of all motions); *United States v. Peterson,* 44 C.M.R. 528 (ACMR 1971) (waiver of all motions other than speedy trial); *United States v. Banner,* 22 C.M.R. 510 (ABR 1956) (waiver of jurisdiction motion).

4. *See United States v. Darring,* 26 C.M.R. 431 (CMA 1958); *see also United States v. Ponds,* 3 C.M.R. 119 (CMA 1952).

5. *United States v. Callahan,* 22 C.M.R. 443 (ABR 1956). *Compare United States v. Mills,* 12 M.J. 1 (CMA 1981), approving a pretrial agreement clause which waived production of witnesses in extenuation and mitigation in favor of their stipulated testimony. The court based its holding on an analysis which emphasized the efficacy for the sentencing process of evidence presented in written versus testimonial form, rather than approving omission of the evidence altogether. (The Court also relied on the voluntary nature of the agreement and the benefit to the appellant.) *United States v. West,* 13 M.J. 800 (ACMR 1982), which was cited in *Castleberry* as an example of permissible plea bargains, is congruent with *Mills* rather than *Callahan.*

6. *United States v. Schaffer,* 12 M.J. 425 (CMA 1982); *United States v. Walls,* 8 M.J. 666 (ACMR 1979), *pet. denied,* 9 M.J. 10 (CMA 1980) (waiver was a "freely conceived defense product").

7. *United States v. Schmeltz,* 1 M.J. 8 (CMA 1975); *United States v. Boyd,* 2 M.J. 1014 (ACMR 1976). Origination of pretrial agreement provisions by the appellant has also figured prominently in the rationale of approval of clauses providing for conditions of probation (*United States v. Lallande,* 46 C.M.R. 170 (CMA 1973)) and restitution (*United States v. Callahan,* 8 M.J. 804 (NCMR 1980)).

event, I am persuaded not only that the three principles outlined above are the law, but that they are quite consistent with liberalization of the sort apparently envisioned by Chief Judge Everett and Judge Fletcher, and therefore are likely to remain the law.

Applying these three principles to the case at bar, I would hold the contested clause offensive to public policy and therefore void because of its inherent tendency to inhibit or impinge upon the function of the trial court by curtailing the presentation of evidence bearing on the propriety of a punitive discharge.[8] While there no doubt are cases in which the provision has no effect on the conduct of the trial, in those cases where it does the effect must necessarily be to inhibit the presentation of evidence or argument which might persuade the sentencing authority not to impose a punitive discharge. If public policy forbids a provision which results in depriving the court of evidence in extenuation or mitigation which is relevant to sentencing in general,[9] public policy must also forbid a provision which results in depriving the court of evidence in extenuation or mitigation which is relevant to one of the court's most significant sentencing options.

I would also hold that the questioned provision may be sustained if initiated voluntarily by the accused. However, as noted above, the records of trial in numerous cases submitted to this court for review demonstrate that this was not such a case; rather, the insertion of such clauses appears to have been a government-established prerequisite for approval of pretrial agreements in the jurisdiction in which appellant's case arose. The record in this case contains no reliable evidence which reflects appellant's desire for such a provision.[10] I conclude that inclusion of the questioned clause in appellant's pretrial agreement was the result of appellant's acquiescence in a contract of adhesion. *See United States v. Schaffer*, 12 M.J. 425 at 428 (CMA 1982).

Turning to the question of prejudice, I note that appellant presented no evidence or argument against a punitive discharge, but that the record contains no evidence that appellant preferred not to do so for his own reasons rather than because of the disputed clause. I am therefore unable to conclude that appellant was not prejudiced by the inherent tendency of the clause to suppress relevant evidence. Consequently, I would strike the offending clause from the pretrial agreement, set aside the sentence, and authorize a sentence rehearing,[11] or, if a rehearing is impracticable, direct disapproval of the adjudged punitive discharge.

---

8. Examination of the provisions of R.C.M. 705 in the Manual for Courts-Martial, United States, 1984, leads me to the same conclusions. (This rule was not in effect at the time of appellant's trial and therefore cannot directly affect the outcome of the case. It may, of course, provide valuable clues about public policy on the subject to which it speaks.) Rule 705 does not explicitly address such clauses, either to approve or prohibit them. What it does prohibit are provisions which deprive the accused of the right to counsel or the right to due process (both of which are implicated by the clause in question) or which deprive the accused of "the right to complete sentencing proceedings." The latter is my principal objection to the clause.

9. As it does. *United States v. Callahan*, 22 C.M.R. 443 (ABR 1956).

10. This includes the portion of the providence inquiry in which appellant responded affirmatively to the trial judge's inquiry whether the guilty plea originated with the defense. That exchange does not tell us whether appellant was referring to the overall idea of a negotiated plea or to this (or any other) specific provision of the agreement. My experience on the trial bench was that the response typically referred to the former, and sometimes was simply contrary to fact. My experience on the appellate bench reinforces these observations.

11. As I see no possible prejudice with respect to the plea or findings, I would not tamper with them. Other invalid provisions may, of course, have more far-reaching effects. *E.g., United States v. Schaffer*, 46 C.M.R. 1089 (ACMR 1973) (provision for waiver of all motions required findings and sentence be set aside).