*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, STEWART, and HACKEL
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Rivelino P. RIVERO**
Lance Corporal (E-3), U.S. Marine Corps
*Appellant*

**No. 202100106**

_____

Decided: 11 May 2022

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Keaton H. Harrell

Sentence adjudged 29 January 2021 by a general court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to paygrade E-1, confinement for 12 years,[1] and a dishonorable discharge.

For Appellant:
*Captain Kimberly D. Hinson, JAGC, USN*

---

[1] Appellant was credited with having served 269 days pretrial confinement.

For Appellee:
*Major Kerry E. Friedewald, USMC*
*Lieutenant John L. Flynn IV, JAGC, USN*

Senior Judge HOLIFIELD delivered the opinion of the Court, in which Judges STEWART and HACKEL joined.

———————————————

**PUBLISHED OPINION OF THE COURT**

———————————————

HOLIFIELD, Senior Judge:

Appellant was convicted, pursuant to his pleas, of one specification of sexual assault of a child in violation of Article 120b, Uniform Code of Military Justice [UCMJ].[2] Appellant asserts three assignments of error [AOE]: (1) that the sentence limitation portion of the plea agreement contained impermissible limitations under a plain reading of Rule for Courts-Martial [R.C.M.] 705(d); (2) that the plea agreement violated public policy by containing a specific sentence to be adjudged; and (3) that Appellant's trial defense counsel provided ineffective assistance of counsel by incorrectly advising Appellant regarding the location of his incarceration and by failing to rebut and refute statements by the victim.[3]

We find no prejudicial error and affirm.

## I. BACKGROUND

Appellant was arraigned on one Charge and its single Specification of sexual assault of a child in violation of Article 120b, UMCJ, and an Additional Charge under the same Article with 14 specifications: 4 alleging sexual assault and 10 alleging sexual abuse, all of the same 14-year-old victim. In exchange for his plea of guilty to the original Charge and its Specification, the convening

———————————————

[2] 10 U.S.C. § 920b.

[3] Appellant provides no indication of what portions of the victim's statements were false, how they were false, or how his trial defense counsel could have attacked them. And we see nothing obvious in the record that supports this claim. Accordingly, we find this aspect of Appellant's ineffective assistance claim to be without merit. *United States v. Matias*, 25 M.J. 356, 363 (C.M.A. 1987).

authority agreed to withdraw and dismiss the Additional Charge and its Specifications.[4]

Another provision in the plea agreement required the military judge to sentence Appellant to a dishonorable discharge, a term of confinement between 8 and 15 years, and reduction to paygrade E-1. The provision precluded the military judge from imposing a fine, but left him free to adjudge forfeitures and any other lawful punishments.[5]

The plea agreement also contained the following:

> If, pursuant to the adjudication of a sentence, [Appellant] meet[s] eligibility criteria established by . . . applicable authority and the confinement facility, the convening authority will recommend in writing to the applicable authority that contact be established with [Navy Personnel Command], the brig [Appellant is] confined in, and the Navy Consolidated Brig Miramar . . . within 10 days to recommend that [Appellant] be placed in the Navy Consolidated Brig Miramar . . . , which is a military facility with a non-violent sex offender treatment program[,] to serve the period of confinement. [Appellant] understand[s] that [his] placement in a military facility with a non-violent sex offender treatment program can be recommended by the convening authority, but that [his] placement in such a facility cannot be guaranteed . . . .[6]

Although the convening authority met his obligation to recommend Appellant's transfer to the Miramar Brig, Appellant was transferred to the Marine Corps Base Camp Pendleton Brig, where he remains confined.

---

[4] App. Ex. I at 7–8. These were withdrawn and dismissed without prejudice, to ripen into prejudice upon completion of appellate review.

[5] *Id.* at 8.

[6] *Id.*

## II. DISCUSSION

### A. Did the Sentence Limitation Portion of the Plea Agreement Include Terms Impermissible under R.C.M. 705(d)?[7]

We review de novo questions regarding interpretation of the Rules for Court-Martial and whether a plea agreement term violates them.[8] When interpreting these rules we start with their plain meaning; absent an absurd result, the plain language controls.[9]

The Military Justice Act of 2016 was signed into law as part of the National Defense Authorization Act for Fiscal Year 2017.[10] Among its many changes to the UCMJ was a completely new Article 53a which, inter alia, allows "the convening authority and the accused [to] enter into a plea agreement with respect to . . . limitations on the sentence that may be adjudged for one or more of the charges and specifications."[11] Whereas previously, under subparagraph (c)(4)(C) of the old Article 60, UCMJ, any agreement between the parties regarding sentence was effectuated through the convening authority's action, such terms are now known to and binding on the military judge when imposing a sentence.

This change in sentencing procedure was accompanied by changes to R.C.M. 705(d)(1), which now allows plea agreements to contain "(A) a limitation on the maximum punishment . . . ; (B) a limitation on the minimum punishment . . . ; or, (C) limitations on the maximum and minimum punishments that can be imposed by the court-martial." Appellant argues that a plain read-

---

[7] Although Appellant points to the "specific" nature of his plea agreement's sentence limitations, we note that the terms did permit the military judge substantial discretion. He could sentence Appellant to from 8 to 15 years confinement and from no to total forfeitures. The only parts of the sentence specifically required were the dishonorable discharge and reduction to paygrade E-1. For the purpose of our analysis, however, we see no distinction between sentencing terms that are partial or complete in their specificity.

[8] *United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F. 2008).

[9] *United States v. Lewis*, 65 M.J. 85, 88 (C.A.A.F. 2007).

[10] Pub. L. No. 114-328, 130 Stat. 2000 (2016).

[11] Article 53a, UCMJ.

ing of R.C.M. 705(d)(1)(A)–(C) necessarily contemplates a range of punishment, not an exact or specific sentence.[12] We find at least three problems with this argument.

First, the text of R.C.M. 705(d) does not contain the word "range" or any of its synonyms. While a minimum sentence limitation alone would usually establish a range between (and including) that limitation and the maximum allowable punishment for the offenses committed, and a maximum limitation alone would usually create a range from "no punishment" up to and including that limitation, the plain language of the rule does not require such ranges. That is, a plea agreement's minimum sentence limitation for a given offense might be "the maximum legally allowed for that offense." Likewise, an agreement's maximum limitation for a given offense may be "no punishment." And there is nothing to indicate that, where both minimum and maximum limitations are stated, they cannot be the same. Just as it is unnecessary to read a requirement for a "range" into the limitations specifically allowed under R.C.M. 705(d)(1)(A) and (B), it is unnecessary to read such a requirement into subparagraph (C).[13]

Second, R.C.M. 705(c)(1) and (2) list, respectively, prohibited and permissible plea agreement terms and conditions. A term requiring a specific sentence is not found under either. But the last item listed as permissible is "[a]ny other term or condition that is not contrary to or inconsistent with this rule."[14] We find nothing in R.C.M. 705 that conflicts with or precludes a term requiring a specific sentence.

Finally, Appellant argues that, had the President intended R.C.M. 705(d) to permit a specific sentence, he would have explicitly said so. Appellant cites Fed. R. Civ. P. 11(c)(1), which allows a plea agreement to contain "a specific sentence or specific range," as an example of language the President could have used. But we find no practical difference between this language and that of R.C.M. 705(d). As previously discussed, the latter does not preclude what is, in effect, a specific sentence. That the Federal Rules of Civil Procedure use different, more explicit language does not change this.

---

[12] While we appreciate that mathematicians would say that identical minimum and maximum limits constitute a "range" of zero, for clarity's sake we use the term to describe a meaningful difference between the limits.

[13] We also find unworkable Appellant's reading of the rule to include an implicit range requirement. What range would then satisfy the rule? One day? One month? Ten percent of the maximum allowed?

[14] R.C.M. 705(c)(2)(G).

Finding nothing absurd in such a plain language reading of R.C.M. 705, we are satisfied to end our interpretation of the rule here. And we find no violation of the rule in the sentencing limitation terms of Appellant's plea agreement.

## B. Did the Requirement of a Specific Sentence Violate Public Policy?

Appellant next claims a plea agreement that requires a court-martial to impose a specific sentence is against public policy, as it renders the presentencing proceedings meaningless, undermines the role of the military judge, and reduces the public's confidence in the military justice system. We review questions regarding law or policy-based challenges to plea agreement terms de novo.[15]

In support of his position, Appellant cites numerous cases in which we, our superior court, or its predecessor found pretrial agreement terms improper for their effect of rendering sentencing proceedings "an empty ritual." We find Appellant's reliance on these cases misplaced. Unlike in *United States v. Allen*[16] (the source of the much-cited "empty ritual" language), the present case did not involve the complete lack of a defense sentencing case. Here, Appellant presented a robust sentencing case, including in-court testimony by two of his brothers, telephonic testimony by his foster mother, and eight defense exhibits totaling 70 pages. While there may be no clear line between what is and what is not a complete sentencing proceeding, Appellant here certainly enjoyed the former.

Nor did the plea agreement in this case "substitute the agreement for the trial" by precluding litigation of issues collateral to pleas and sentence limitations, as in *United States v. Cummings*.[17] Rather, the terms to which Appellant now objects deal squarely with sentence limitations, one of the areas the court in *Cummings* held was appropriate for pretrial agreements.

Appellant's plea agreement did not hide substantive terms of the agreement from the military judge, thereby undermining the integrity of the guilty plea itself, as in *United States v. Soto*[18] or *United States v. Cassity*[19]. Given the

---

[15] *United States v. Sunzeri*, 59 M. J. 758, 760 (N-M Ct. Crim. App. 2004).

[16] 8 C.M.A. 504, 25 C.M.R. 8 (1957).

[17] 17 C.M.A. 376, 38 C.M.R. 174 (1968) (term of pretrial agreement required accused to waive speedy-trial issue).

[18] 69 M.J. 304 (C.A.A.F. 2011).

[19] 36 M.J. 759 (C.A.A.F. 1992).

current practice of providing the entire agreement to the military judge before sentencing, combined with the affirmative, on-the-record assurances from Appellant and counsel that there were no terms other than those contained in the agreement, the military judge was fully aware of the agreement's terms. His scrutiny of the plea agreement thus ensured that the agreement did not "transform the trial into an empty ritual."[20] And, unlike in *United States v. Davis*,[21] the plea agreement's terms here did not preclude Appellant from presenting a case in extenuation and mitigation, nor did they prevent Appellant from calling witnesses, a provision we rejected in *United States v. Sunzeri*[22].

In citing these cases, we believe Appellant mistakenly construes the military judge's selection of sentence as being the only meaningful part of the sentencing process. That is, since the specificity of the plea agreement's sentencing limitations removed the military judge's discretion, they rendered the sentencing proceedings meaningless or "an empty ritual."

As a preliminary matter, we disagree with Appellant's premise that the military judge had no discretion in sentencing. In fact, under the plea agreement's terms, the military judge was free to sentence Appellant to as little as 8 years' and as much as 15 years' confinement. (That the military judge awarded a mid-range 12 years' confinement indicates he was, in fact, not constrained in his decision by either the minimum or maximum limitation.) He was free to award forfeitures—or not. The only punishments over which the military judge had no discretion were a fine (precluded by the plea agreement), reduction to paygrade E-1 (required by the plea agreement), and a dishonorable discharge (mandated by law for the offense of sexual assault of a child, absent a plea agreement term providing otherwise). Taken together, these terms make it incorrect to say the military judge had no discretion.

But, even if the terms of the plea agreement had removed all discretion in sentencing (e.g., had required a sentence of confinement and forfeitures where the minimum and maximum terms were identical), this would not have rendered the presentencing proceedings meaningless. There would still be several important ways the sentencing evidence would have effect.

---

[20] *Soto*, 69 M.J. at 307.

[21] 50 M.J. 426 (C.A.A.F. 1999).

[22] 59 M. J. at 761 (term precluding witness testimony, whether live, remote, or in writing, and regardless of witness location, denied the appellant a "complete presentencing proceeding," and was, therefore against public policy).

First, the military judge can only approve and accept plea agreements whose terms comply with R.C.M. 705[23] and do not "violate public policy, appellate case law, or fail to adhere to basic notions of fundamental fairness"[24]. If evidence presented in presentencing convinces a military judge that the sentencing limitations fail this test, she must reject the agreement.[25] Second, while recent changes contained in R.C.M. 705(d)(1), discussed supra, allow a convening authority and an accused to negotiate a specific minimum/maximum punishment range that is binding on the military judge, the concomitant changes in R.C.M. 1101(a)(5) and 1109(f) now allow a military judge to recommend that the convening authority suspend any part of that punishment. Such a recommendation restores much of a convening authority's historically broad, but now relatively limited, clemency power. Third, the presentencing evidence informs the convening authority's decision regarding the military judge's suspension or clemency recommendation, if any. Fourth, the sentencing evidence can be cited in a post-trial request for clemency, as pretrial plea agreement negotiations rarely present all extenuating and mitigating matters to the convening authority. And fifth, this evidence informs this Court's sentence appropriateness review; we may affirm only those sentences or parts thereof "as the Court finds correct in law and fact and determines, on the basis of the entire record, should be approved."[26]

Although Appellant's presentencing evidence resulted in neither recommended nor actual suspension or clemency, we assume it was considered by the military judge and the convening authority in the first, second, and fourth of these listed uses. And we know it was considered by this Court in the fifth.[27]

---

[23] Article 53a(b)(5), UCMJ; R.C.M. 910(f).

[24] *United States v. Alkazahg*, 81 M.J., 764, 787 n.129 (N-M Ct. Crim. App. 2021) (citing *United States v. Soto*, 69 M.J. 304, 307 (C.A.A.F. 2011) (additional citation omitted).

[25] The military judge could strike specific terms with the consent of the parties, or reject the entire agreement. *See United States v. Green*, 1 M.J. 453 (C.M.A. 1976).

[26] Article 66(d)(1), UCMJ. See *Allen*, 8 C.M.A. at 508, 25 C.M.R. at 128 ("[D]efense counsel did not . . . provide anything from which a board of review could reach an informed judgment as to the appropriateness of the sentence affirmed by the convening authority . . . . If there is nothing of substance in the record, there is little that the board of review can do to carry out its responsibility.")

[27] We trust that counsel will take from this the continued importance of presenting a thorough sentencing case—even when the plea agreement allows the court-martial little or no discretion in fashioning a sentence. Despite the recent changes in military

Additionally, "[a]ppellate case law, its sources, and R.C.M. 705 are, themselves, statements of public policy."[28] The President has clearly indicated that the sentencing decision is not the functional equivalent of sentencing proceedings. Paragraph (c)(1)(B) of R.C.M. 705 prohibits any terms that deprive an accused of "the right to complete sentencing proceedings." Yet, paragraph (d)(1) of the same rule specifically provides for sentence limitations—including combined maximum and minimum limitations. Reading the rule as a harmonious whole, we find that such limitations, even where they remove much or all of a court-martial's discretion in deciding a sentence, do not constitute a denial of complete sentencing proceedings. Here, Appellant negotiated the provisions of his plea agreement in accordance with R.C.M. 705(d)(1) and enjoyed complete sentencing proceedings as required by R.C.M. 1001 and 1002. Accordingly, we find the presence and effect of the sentence limitation provision in this case accorded with the President's statement of public policy.

Citing a historical trend to expand the military judge's role in determining an appropriate sentence at general or special courts-martial at the cost of the convening authority's, Appellant claims "a plea agreement that strips key portions of judicial discretion and places them with the [c]onvening [a]uthority is against public policy and cannot stand."[29] We disagree. First, we note that the decision to include a requirement for a specific sentence in a plea agreement is not the convening authority's alone. An accused has the ultimate say in whether to consent to a plea agreement's terms. Second, as discussed above, R.C.M. 705(d)(1) and 1002(a)(2) now specifically allow plea agreement terms to cabin the court-martial's discretion as to sentences--provided both parties agree to them as they did in the case. And third, we see no reason for R.C.M. 705's limitation provisions to diminish public faith in the military justice system, given the extensive role military judges continue to play in the sentencing-related portions of that system.

We are left, then, to examine whether the recent changes to sentencing procedures, particularly sentence limitation terms, otherwise violate public policy by unlawfully infringing on Appellant's due process rights. In doing so we are mindful of the Court of Appeals of the Armed Forces' [CAAF's] statement regarding "the concept of 'military due process,' an amorphous concept

---

justice regarding sentencing procedures, a thoughtful, zealous sentencing case remains an integral part of a court-martial.

[28] *United States v. Cassity*, 36 M.J. 759, 761 (N-M Ct. Crim. App. 1992).

[29] Appellant's Br. at 5. For example, Appellant points to recent changes that greatly diminished convening authorities' clemency powers. *See* R.C.M. 1109.

. . . that appears to suggest that servicemembers enjoy due process protections above and beyond the panoply of rights provided to them by the plain text of the Constitution, the UCMJ, and the [Manual for Courts-Martial]."[30] In short, CAAF said no such additional protections exist.

Appellant claims no violations of a constitutional right—and we find none. But we do find that current UCMJ and R.C.M. language squarely authorizes the sentence limitations Appellant agreed to in his plea agreement. Thus, while Appellant claims the new sentencing procedures are unfair and improper, they are, in reality, simply different from previous practice. The fact that military justice evolves is not, in itself, against public policy.

Finding that Appellant did receive complete presentencing proceedings, that his plea agreement's punishment limitations did not render those proceedings meaningless, and that the terms of his plea agreement did not violate public policy, we find this AOE to be without merit.

**C. Did Trial Defense Counsel Provide Ineffective Assistance in Advising Appellant Regarding the Location of His Confinement?**

We review a claim of ineffective assistance of counsel de novo, applying the two-part *Strickland v. Washington* test: was defense counsel's performance deficient, and was that deficient performance prejudicial?[31] When evaluating such a claim in the context of a guilty plea, "the prejudice inquiry is modified to focus on whether the ineffective performance affected the outcome of the plea process."[32] That is, Appellant must show there is "a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial."[33] And, in weighing Appellant's post-hoc claims of how he would have acted but for the alleged deficiency, we "must look to contemporaneous evidence."[34]

Assuming arguendo that Appellant's counsel was ineffective in advising him that he would be confined at the Miramar Brig, vice Camp Pendleton's, we

---

[30] *United States v. Vazquez*, 72 M.J. 13, 19 (C.A.A.F. 2013).

[31] *United States v. Furth*, 81 M.J. 114, 117 (C.A.A.F. 2021) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

[32] *Furth*, 81 M.J. at 117, quoting *United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012) (citation omitted) (internal quotation marks omitted).

[33] *Id*, quoting *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (citation and internal quotation marks omitted in original).

[34] *Id*, quoting *Lee*, 137 S. Ct. at 1967.

move directly to the second prong of the *Strickland* test.[35] Doing so, we find no prejudice.

Pursuant to a motion to attach, Appellant provided this Court with two declarations, one from himself and one from his brother.[36] Both state that, based on conversations with Appellant's civilian and uniformed trial defense counsel, Appellant believed his transfer to the Miramar Brig was guaranteed. But these statements are contradicted by the Record.

First, the specific language of Appellant's plea agreement clearly states that, although the convening authority would *recommend* that Appellant be placed "in a military facility with a non-violent sex offender treatment program" such as the Miramar Brig, his "placement in such a facility cannot be guaranteed."[37] Second, during his colloquy with the military judge regarding the terms of the plea agreement, Appellant stated that: he had read the agreement completely and discussed its contents with his counsel; he understood the contents of the agreement; the agreement contained all the understandings or agreements that he had in his case; no one had made promises to him that were not contained in the written agreement; and there was nothing in the agreement that he wished to have explained.[38]

Even were we to further assume Appellant's and his brother's post hoc declarations are true—that they did, in fact, believe Appellant's transfer to the Miramar Brig was guaranteed notwithstanding the plea agreement provision to the contrary—*and* that this belief was due to incorrect assurances from counsel, we do not find a "reasonable probability" that but for this erroneous belief Appellant would not have pleaded guilty. The plea agreement was extremely beneficial to Appellant; in exchange for pleading guilty to the Charge and its sole Specification, the convening authority agreed to withdraw and dismiss the Additional Charge and its 14 specifications, effectively reducing the maximum potential confinement from 410 years to 30. The convening authority then agreed to further limit Appellant's confinement to no more than 15 years. Also, the Government's case was strong. The victim's descriptions of events were consistent, detailed, and supported by third-party observations of

---

[35] See *United States v. Captain*, 75 M.J. 99, 103 (C.A.A.F. 2016) ("[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed" (alterations in original) (citation omitted) (internal quotation marks omitted)).

[36] Appellant's Mot. to Attach, App'x A, B.

[37] App. Ex. I at 8.

[38] R. at 39–41.

Appellant's behavior. And Appellant confessed his illicit conduct to a fellow Marine. Finally, the evidence in aggravation and the nature of Appellant's misconduct make it unlikely his evidence in extenuation and mitigation would have led to a less severe sentence following a contested trial.

Accordingly, Appellant has failed to persuade us that, but for his trial counsel's alleged ineffectiveness, he would have rejected the plea agreement. Finding no prejudice, we find he has failed to meet his burden under *Strickland*.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[39] The findings and sentence as approved by the convening authority are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[39] Articles 59 & 66, UCMJ.