## UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Chad A. LIBECAP
## Boatswains Mate Second Class (E-5), U.S. Coast Guard

## CGCMS 24214

## Docket No. 1154

## 30 August 2002

Special Court-Martial convened by Commander, Coast Guard Group, New Orleans. Tried at New Orleans, Louisiana, 1 May 2001.

| | |
|---|---|
| Military Judge: | CAPT Ronald E. Kilroy, USCG |
| Trial Counsel: | LT(jg) Curtis E. Borland, USCGR |
| Assistant Trial Counsel: | LT Ronald K. Schuster, USCG |
| Detailed Defense Counsel: | LT(jg) Brian T. Maye, JAGC, USNR |
| Assistant Detailed Defense Counsel: | LT(jg) John M. Nicholson, JAGC, USNR |
| Appellate Defense Counsel: | CDR Jeffrey C. Good, USCG |
| Appellate Government Counsel | LT Sandra J. Miracle, USCG |

## BEFORE
## PANEL NINE
## BAUM, BRUCE, & PALMER
Appellate Military Judges

BRUCE, Judge:

In this case, we must decide if a novel provision in a pretrial agreement is unenforceable because it is prohibited by Rule 705(c)(1), Rules for Courts-Martial (RCM), Manual for Courts-Martial, (2000 Ed.) (MCM) or it violates public policy.

Appellant was tried by a special court-martial, military judge alone. He was convicted in accordance with his pleas, made pursuant to a pretrial agreement, of three specifications of assault consummated by a battery on his wife, and one specification of assault on a sentinel in the execution of his duty, all in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 (UCMJ). Appellant was sentenced to a bad conduct discharge, six months confinement, forfeiture of $1,134.00 pay per month for six months, and reduction to paygrade E-1. In accordance with the pretrial agreement, the

Convening Authority approved only so much of the sentence as provided for a bad conduct discharge, confinement for 100 days, and reduction to paygrade E-1.

This case was originally submitted on its merits. By order dated December 13, 2001, we specified as an issue whether a provision of Appellant's pretrial agreement violated RCM 705 or public policy.[1] The provision reads as follows:

> I agree that I will request that the Military Judge award me a Bad Conduct Discharge. My defense counsel has fully advised me that a punitive discharge from the service will carry with it an eradicable stigma that is commonly recognized by our society. I realize that a punitive discharge will place limitations on employment opportunities and will deny me other advantages that are enjoyed by one whose discharge characterization indicates that he/she has served honorably. A punitive discharge will affect my future with regard to my legal rights, economic opportunities, and social acceptability.

> Pretrial Agreement, Appellate Exhibit XV.

Appellant now asserts that this provision violates RCM 705, and that we should reform the pretrial agreement to exclude the provision and grant him a sentence rehearing. The Government asserts that this provision is lawful and enforceable, and that Appellant is not entitled to any relief. Both Appellant and the Government have moved to attach documents. Those motions, and all other motions we have not previously ruled on in this case, are granted. We heard oral argument in this case on April 10, 2002.

## FACTS

---

[1] We also asked appellate counsel to address these questions:

1. Did the military judge's inquiry into this provision and his explanation of its ramifications meet the requirements of RCM 910(f) and case law on the subject?

2. If the military judge's inquiry, or failure to reform the agreement, constituted error, was the error harmful?

3. If prejudicial error was committed, what is the appropriate relief? Does it include setting aside the findings of guilty and ordering a rehearing, and does Appellant seek such relief?

4. 4. If the indicated provision is prohibited and against public policy, may Appellant waive the issue? If so, does failure to request that the findings and sentence be set aside waive the issue and constitute ratification of the desire to plead guilty under the terms of the pretrial agreement?

Order for Additional Briefing of December 13, 2001.

The following facts are based on post-trial affidavits and are not disputed, *see United States v. Ginn*, 47 M.J. 236 (1997), or are evident from the record of trial. Shortly before trial, trial counsel, defense counsel, and Appellant began negotiating a pretrial agreement. Among other things, trial counsel proposed the provision requiring the Appellant to request a bad conduct discharge at trial. After negotiations, the pretrial agreement included the provision requiring Appellant to request a bad conduct discharge. At trial, Appellant pleaded guilty, in accordance with the pretrial agreement, and the military judge conducted an inquiry into the terms of the pretrial agreement. The military judge specifically addressed the provision requiring the Appellant to request a bad conduct discharge. The military judge ascertained from trial counsel, defense counsel and Appellant, that everyone understood the provision and what it required of Appellant. He also ascertained that Appellant had voluntarily entered into the pretrial agreement. The military judge stated that in the event the Appellant requested a bad conduct discharge, he would consider the request along with the other evidence bearing on an appropriate sentence. The military judge did not conduct the standard inquiry for an accused who requests a bad conduct discharge—the so-called bad conduct discharge striker inquiry. *See Military Judges Benchbook,* DA PAM 27-9, 1 April 2001, Paragraph 2-7-27.

The Appellant was found guilty in accordance with his pleas, and the military judge found that the pretrial agreement was not in violation of RCM 705, did not violate public policy, and did not conflict with his own notions of fundamental fairness. The sentencing phase of the trial then proceeded. The Appellant put on a case in sentencing, but never requested a bad conduct discharge as required by the pretrial agreement. For no apparent reason, this very obvious breach of the pretrial agreement was not addressed by anyone on the record.

The military judge sentenced Appellant, and reviewed the sentence limiting portion of the pretrial agreement, as if the pretrial agreement were still fully in effect. Following trial, the Convening Authority complied with the sentence limiting part of the pretrial agreement, as if the pretrial agreement were still fully in effect. On appeal, Appellant's case was submitted on the merits. Following our specification of the issue concerning the enforceability of the novel pretrial agreement provision, we learned that Appellant did not want to request a bad conduct discharge and wanted to tell the military judge that he would like a second chance in the service. He only failed to tell the military judge that he would like to stay in the Coast Guard because his defense counsel did not offer him the opportunity to make such a plea during his unsworn statement.

DISCUSSION

3

A.  The Prohibited Pretrial Agreement Provision

Pretrial agreements are an accepted part of military justice practice and, within limits, they are useful and beneficial tools.  M. Foreman, *Let's Make a Deal! The Development of Pretrial Agreements in Military Criminal Justice Practice*, 170 Mil. L. Rev. 53.  Without limits, however, pretrial agreements might well subvert the military justice system and render courts-martial empty rituals.  *See United States v. Allen,* 8 USCMA 504, 25 CMR 8 (1957)*; United States v. Cummings*, 17 USCMA 376, 38 CMR 174 (1969).  While it is clear that the military justice system must place some limits on the terms that are permitted to be included in a valid pretrial agreement, the extent of those limits is not all that well defined.  In *United States v. Cassity,* 36 M.J. 759 (NMCMR 1992), Judge Mollison fairly and accurately summarized the state of the law concerning pretrial agreements and the limits on their terms in this way:

> Plea bargain agreements are authorized in courts-martial, however, before an accused's guilty plea may be accepted by the military judge, the military judge must inquire whether the plea is the product of such an agreement.  Arts. 36, 45(a), UCMJ, 10 U.S.C. §§ 836, 845(a); Rules for Courts-Martial (R.C.M.) 705, 910(d), Manual for Courts-Martial, United States, 1984.  Therefore, the existence of a pretrial agreement must be disclosed to the military judge, and the military judge must inquire to ensure the accused understands the agreement and the parties agree to its terms.  R.C.M. 910(f).  The agreement must comply with requirements and restrictions on pretrial agreements set forth in R.C.M. 705.  In a bench trial, inquiry into the sentence limitation portion of the agreement is ordinarily deferred until after the announcement of sentence.  *Id*.  Where the plea bargain encompasses conditions that the trial judge believes violate appellate case law, public policy, or the trial judge's own notions of fundamental fairness, he should, on his own motion, strike such provisions from the agreement with the consent of the parties.  *United States v. Green,* 1 M.J. 463 (C.M.A. 1976); *United States v. Elmore,* 1 M.J. 262 (C.M.A. 1976); *United States v. Hoaglin,* 10 M.J. 769 (N.C.M.R. 1981).  If the parties do not consent, the military judge must permit the accused to withdraw the guilty plea.  *Cf.* R.C.M. 910(h)(3).

> * * *

> What provisions violate appellate case law is determined by reference to precedent.  Determining what provisions violate "public policy" is potentially more troublesome.  Appellate case law, its sources, and R.C.M. 705 are, themselves, statements of public policy.  The United States Court of Military Appeals has observed that a pretrial agreement provision that "substitutes the agreement for the trial, and, indeed, renders the latter an empty ritual" would violate public policy.  *United States v. Cummings,* 17 U.S.C.M.A. 376, 38 C.M.R. 174, 78 (1968).  Beyond that, however, the Court of Military Appeals "has not articulated any general approach to pretrial agreement conditions that can be used to determine which conditions are permissible and which are to be condemned.  An analysis of the cases suggests, however, that the court will disapprove those conditions that it believes are misleading or [abridge] fundamental rights of the

4

accused. . . ." 1 Francis A. Gilligan & Frederick I. Lederer, Court-Martial Procedure § 12-25.20 (1991).

\* \* \*

Identifying the sponsor of a questioned provision -- Government or defense -- has been helpful in determining whether the provision's inclusion in a pretrial agreement violates public policy. See *United States v. Gibson,* 29 M.J. 379, 382 (C.M.A. 1990); *United States v. Zelenski,* 24 M.J. 1 (C.M.A. 1987); *United States v. Schmeltz,* 1 M.J. 8 (C.M.A.), rev'd on other grounds, 1 M.J. 273 (C.M.A. 1975). The rules of the marketplace, however, are not permitted to operate unregulated in the military justice system. Despite the mutual assent of the parties, the propriety of a particular pretrial agreement provision and its operation in the case must be assessed in view of the basic tenets of the military justice system. *United States v. Dawson,* 10 M.J. 142, 144-45 (C.M.A. 1981). Therefore, pretrial agreements in courts-martial are not always governed by ordinary rules of contract, although "plea bargain law" has drawn heavily on contract law analogies. *United States v. Koopman,* 20 M.J. 106, 110 (C.M.A. 1985) (quoting *Cooper v. United States,* 594 F.2d 12, 15-16 (4th Cir. 1979)). *See also United States v. Kazena,* 11 M.J. 28, 31 (C.M.A. 1981); *Cummings,* 38 C.M.R. at 178.

From the foregoing, the following principle emerges: Pretrial agreement provisions are contrary to "public policy" if they interfere with court-martial fact-finding, sentencing, or review functions or undermine public confidence in the integrity and fairness of the disciplinary process. *See United States v. Mitchell,* 15 M.J. 238, 240-241 (C.M.A. 1983); *Green,* 1 M.J. at 456; *United States v. Foust,* 25 M.J. 647, 649 (A.C.M.R. 1987; *Jones,* 20 M.J. at 855; *Callahan,* 22 C.M.R. at 448.

36 M.J. at 760-62.

The pretrial agreement provision at issue in this case required the Appellant to request a bad conduct discharge at trial. Appellate counsel have not directed our attention to any prior cases in which such a provision was either approved or invalidated, and our own research has not revealed such a case. Accordingly, we cannot rely on a squarely controlling precedent to aid us in deciding if this provision is enforceable.

The military judge did not find that this provision violated his own notions of fundamental fairness. Perhaps we could review this decision for abuse of discretion, *see Cassity,* 36 M.J. at 762 ("the discretion the military judge exercises in determining whether a provision violates notions of fundamental fairness is subject to review for abuse of that discretion."), but we prefer to assess whether the provision runs afoul of the prohibitions contained in RCM 705(c)(1), or violates public policy. We would probably have to address these issues in deciding whether the military judge abused his discretion, and it seems more direct to just determine if the provision is prohibited by the Manual for Courts-Martial or public policy.

5

Among other things, RCM 705(c)(1)(B) states that a term in a pretrial agreement shall not be enforced if it deprives the Appellant of "the right to complete sentencing proceedings." This clearly does not mean that a valid pretrial agreement cannot require Appellant to give up certain procedural or evidentiary rights in sentencing. RCM 705(c)(2) specifically permits an Appellant to waive procedural requirements such as the opportunity to obtain the personal appearance of sentencing witnesses. On the other hand, at least one court or criminal appeals predecessor disapproved a provision that precluded offering any evidence in mitigation or extenuation at sentencing. *United States v. Callahan,* 22 CMR 443 (A.B.R. 1956). The provision at issue in this case, requiring Appellant to request a bad conduct discharge at trial, is perhaps not as egregious as precluding the offering of any evidence in mitigation or extenuation, but it generally would have a greater tendency to deprive an Appellant of his right to complete sentencing proceedings than would forgoing the personal appearance of witnesses.

As we see it, the question of whether or not to impose a punitive discharge as a part of the sentence in a court-martial is always a significant sentencing issue, and often is the most strenuously contested sentencing issue.[2] While a provision requiring the accused to request a bad conduct discharge at trial leaves him free to otherwise make the best case he can for a minimal sentence, including evidence and argument to the effect that a punitive discharge is unwarranted, we are persuaded that the accused's request for a bad conduct discharge will always have the potential to seriously undercut any other efforts at trial to avoid a punitive discharge. Thus, we are convinced that although such a sentencing proceeding might in some sense be viewed as complete, the requirement to request a bad conduct discharge would, in too many instances, largely negate the value of putting on a defense sentencing case, and create the impression, if not the reality, of a proceeding that was little more than an empty ritual, at least with respect to the question of whether a punitive discharge should be imposed. Therefore, we conclude that such a requirement may, as a practical matter, deprive the accused of a complete sentencing proceeding. Moreover, under the circumstances of this case, we find that the requirement for the Appellant to request a bad conduct discharge improperly placed him in the position of either giving up the favorable pretrial agreement he wanted or forgoing a complete sentencing proceeding. We find that RCM 705(c)(1) prohibited this provision.

For the same reasons, we conclude that, under the circumstances of this case, the provision requiring the Appellant to request a bad conduct discharge was against public policy. For the reasons just discussed, we are convinced that enforcement of the provision would interfere with the sentencing process and undermine public confidence in the integrity and fairness of the Appellant's court-martial.

We are also concerned that enforcement of this provision could have interfered with the sentencing process by misleading the military judge into believing that Appellant actually, subjectively believed that he deserved a bad conduct discharge, or at

---

[2] In this case the provision requiring the Appellant to request a bad conduct discharge at trial was proposed by the Government. Therefore, we need not address the validity of such a provision were it to be proposed by the accused.

6

least accepted that he should not be retained in the service, when that clearly was not the case. In this case, the Appellant placed his sentence limitation in jeopardy because he did not want to request a bad conduct discharge, as the pretrial agreement required him to do. It is clear that whatever it was that impelled him to accept the provision in the first place, it was not that he actually, subjectively wanted to ask the military judge for a bad conduct discharge. The military judge obviously knew that the pretrial agreement required the Appellant to request a bad conduct discharge. That does not mean, however, that the military judge necessarily assumed that the request was insincere and that the Appellant agreed to the requirement without believing he deserved a punitive discharge. It is the nature of a pretrial agreement to induce the accused to give up rights and affirmatively do things that he might not otherwise do, in order to secure a sentence limitation or some other benefit. Nevertheless, when it comes to sentencing, it seems to be overreaching for the Government to induce the accused to request a bad conduct discharge when the accused would not otherwise be willing to do so.

Having decided that the provision requiring the Appellant to request a bad conduct discharge at trial was prohibited by RCM 705(c)(1), and that it violates public policy, we must now test for prejudice. We find that Appellant was prejudiced by this provision, even though he did not in fact request a bad conduct discharge at trial. Appellant wanted to tell the military judge that he had potential for further service and that he wanted a second chance in the service, but it appears that he and his counsel were constrained by concern about having already failed to request a bad conduct discharge as the pretrial agreement required. In view of those concerns, and the fact that Appellant did not tell the military judge he wanted a second chance, trial defense counsel could not argue forcefully for a sentence that did not include a punitive discharge.

Additionally, although Appellant did not request a bad conduct discharge, we do not know how his failure to do so was interpreted by the military judge. As noted earlier, the record does not reveal that the breach of the pretrial agreement was addressed by any of the parties at trial. Under the circumstances, where the military judge was clearly aware of the requirement for Appellant to ask for a bad conduct discharge, we are not satisfied that Appellant was not prejudiced in sentencing by the improper provision. While Appellant's offenses are serious, we are not convinced that he could not have successfully argued for a sentence that did not include a punitive discharge if he had not been restrained by concerns about the unfulfilled requirement to request a bad conduct discharge.

Accordingly, we find that Appellant has been prejudiced by the invalid provision requiring him to request a bad conduct discharge at trial. The relief to be granted in a case such as this appears to depend on the circumstances of the case. Where the error affects the voluntariness of the Appellant's pleas, the findings and sentence should be set aside and a rehearing authorized. *See United States v. Holland*, 1 M.J. 58 (CMA 1979). In other cases, it is permissible to remedy the error by refusing to give effect to the invalid provision. *See United States v. Spriggs*, 40 M.J. 158 (CMA 1994); *United States v. Dawson*, 10 M.J. 142 (CMA 1981). As the Court of Appeals for the Armed Forces has said, "The remedy for an illegal pretrial agreement is to declare its provisions

7

unenforceable." *United States v. Davis*, 50 M.J. 426, 430 (1999). These precedents demonstrate that it is not necessary for us to obtain the consent of the Convening Authority before reforming the pretrial agreement. *But see Cassity* 36 M.J. at 765 ("If the parties concurred, the Court could strike the provision from the agreement and take appropriate action on the sentence.").


## B. The Incomplete Pretrial Agreement Inquiry

Appellant's breaching his pretrial agreement at trial by failing to request a bad conduct discharge was an important matter, but it was not addressed by anyone on the record. Thus, although Appellant placed his protection under the pretrial agreement in extreme jeopardy by breaching a material provision of the agreement, there is nothing in the record to explain the omission or the parties' position on its affect on the sentence limitations. We do not know if the military judge ignored the provision, or inferred that Appellant meant to comply but through an oversight neglected to make the required request. We do not know why trial counsel chose to ignore an obvious breach of the pretrial agreement or if the Convening Authority would have complied with the agreement if Appellant had not been sentenced to a bad conduct discharge. We now know that Appellant did not want to request a bad conduct discharge, did not fail to do so through inadvertence, and that he wanted to tell the military judge that he would like a second chance in the service.

The military judge did not inquire about Appellant's understanding of the ramifications of requesting a bad conduct discharge—the so-called bad conduct discharge striker inquiry.[3] This would appear to indicate that he did not infer that the Appellant meant to request a bad conduct discharge but failed to do so by oversight, because the military judge is generally presumed to know of the requirement to conduct an inquiry if the Appellant requests a bad conduct discharge. However, we are reluctant to make such an assumption in a case where none of the parties seemed to think that Appellant's breach of a material provision of the pretrial agreement needed to be addressed on the record.

The Government asserts that the military judge was not obligated to take note of the Appellant's obvious breach of the pretrial agreement or to make any effort to protect Appellant by advising him that he had breached his pretrial agreement. We disagree. The military judge is required to inquire into the terms of the pretrial agreement and ensure that all of the parties at trial understand the terms of the pretrial agreement. RCM 910(f); *United States v. Green*, 1 M.J. 453 (CMA 1976)("Inquiry into the actual sentence limitations specified in the plea bargain should be delayed until after announcing sentence where the accused elects to be sentenced by the military judge rather than a court with members. We will view a failure to conduct a plea bargain inquiry as a matter

---

[3] If Appellant had requested a bad conduct discharge at trial, an inquiry concerning Appellant's understanding of the ramifications of a bad conduct discharge would have been required, *United States v. McNally*, 16 M.J. 32 (1983); *Military Judges Benchbook,* DA PAM 27-9, 1 April 2001, Paragraph 2-7-27, in addition to the inquiry into the parties' understanding of the terms of the pretrial agreement.

affecting the providence of the accused's plea after the implementation date of this opinion.").

This requirement for an inquiry includes explaining the effect of the pretrial agreement on the sentence after the accused has been sentenced. *See Coast Guard General and Special Court-Martial Trial Guide,* Appendix 2 and Chapter 2, at 2-6 to 2-8. It seems illogical, and even misleading, for the military judge to conduct such an inquiry—and as part of the inquiry to state the effect of the pretrial agreement on the sentence, as if the pretrial agreement is fully in effect—when the accused has breached a material part of the pretrial agreement, without addressing the breach of the pretrial agreement. Accordingly, we find that the military judge is required to inquire, on the record, into an obvious breach of a pretrial agreement that occurs at trial, as a part of his inquiry into the parties' understanding of the pretrial agreement. If such a breach occurs after the military judge has already inquired into the parties' understanding of the pretrial agreement, as occurred here, the military judge must re-open the inquiry and determine what effect the breach of the pretrial agreement has on the parties' understanding of the pretrial agreement.

Generally, under these circumstances, we would have to decide if this error rendered Appellant's pleas improvident. However, in this case, Appellant has affirmatively stated in his pleadings to this court that his pleas were voluntary and that he does not seek to disturb the findings. Appellant's Response to Court's Order of 13 December 2001 at 1. What Appellant does want is to be resentenced pursuant to a pretrial agreement that has been reformed to exclude the provision requiring him to request a bad conduct discharge. We need not decide if the relief requested should be granted based on the failure to conduct an inquiry into the meaning and effect of Appellant's material breach of the pretrial agreement, because we have found that such relief is appropriate because the provision requiring Appellant to request a bad conduct discharge at trial was prohibited by RCM 705(c)(1), and violates public policy.

Decision

Here, Appellant has specifically stated that the error did not affect the voluntariness of his pleas, and both Appellant and the Government assert that the appropriate remedy for prejudicial error is a rehearing on sentence. We agree. While we find that the improper pretrial agreement provision may have affected Appellant's ability to avoid a bad conduct discharge at trial, we do not find that it otherwise affected the approved sentence. Accordingly, we affirm the findings of guilty as approved below, but set aside that portion of the convening authority's action that relates to the sentence. The record of trial is returned to the convening authority, who may disapprove the sentence and order a sentence rehearing. If such a rehearing is ordered, the pretrial agreement remains in effect, absent the provision requiring a request for a bad conduct discharge, which we declare to be invalid and unenforceable. If a rehearing is deemed impracticable, the convening authority may approve the sentence previously approved, but without the bad conduct discharge, or he may approve some lesser sentence, still

without the bad conduct discharge.  In any event, upon completion of action by the convening authority, either on a sentence imposed at a rehearing or on one previously approved, but without the bad conduct discharge, the record will be returned to this Court for further review pursuant to Article 66, UCMJ.  *Boudreaux v. United States Navy-Marine Corps Court of Military Review*, 28 M.J. 181 (CMA 1989).

Chief Judge BAUM and Judge PALMER concur.



For the Court,

Roy Shannon, Jr
Clerk of the Court