# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

---

**No. ACM 40301**

---

**UNITED STATES**
*Appellee*

**v.**

**Kyle M. KROETZ**
Senior Airman (E-4), U.S. Air Force, *Appellant*

---

Appeal from the United States Air Force Trial Judiciary

Decided 27 October 2023

---

*Military Judge*: Jason M. Kellhofer.

*Sentence*: Sentence adjudged 4 April 2022 by GCM convened at Joint Base Langley-Eustis, Virginia. Sentence entered by military judge on 18 May 2022: Dishonorable discharge, confinement for 68 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant*: Major Matthew L. Blyth, USAF.

*For Appellee*: Major Brittany M. Speirs, USAF; Captain Olivia B. Hoff, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, CADOTTE, and KEARLEY, *Appellate Military Judges*.

Judge KEARLEY delivered the opinion of the court, in which Senior Judge RICHARDSON and Senior Judge CADOTTE joined.

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

KEARLEY, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one charge and one specification of conspiracy to distribute child pornography, one charge and

one specification each of wrongful possession and distribution of child pornography, and one specification of indecent language, in violation of Articles 81 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 934.[1] The military judge sentenced Appellant to a dishonorable discharge, confinement for 68 months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority suspended the adjudged forfeitures of pay and allowances for six months and waived the automatic forfeitures for a period of six months.

Appellant asserts two assignments of error: (1) whether a plea agreement requiring a dishonorable discharge renders the sentencing procedure an "empty ritual" and thus violates public policy; and (2) whether Appellant's sentence is inappropriately severe.[2] Additionally, we address an issue discovered during our review of this case: (3) whether Appellant is entitled to relief when the plea agreement does not specify agreed-upon limitations for confinement for each enumerated offense as required by service regulations. We find no error materially prejudicial to Appellant's substantial rights, and we affirm the findings and sentence.

# I. BACKGROUND

Appellant's offenses involved possession of 398 video or digital image files[3] of child pornography and participation in private chatrooms where he discussed, received, and distributed child pornography. He actively participated in a group chat on a social media application to send and receive child pornography, and he conspired with other individuals to distribute child pornography. He was involved as an administrator in the management of the chatrooms where he vetted and verified the chatroom users and he provided directions to set up an autonomous program to screen potential members. Additionally, he communicated indecent written language to another chatroom user.

On 1 April 2022, Appellant entered into a plea agreement with the convening authority in which Appellant agreed that upon acceptance of his guilty plea, the sentencing authority must enter a sentence including a "mandatory dishonorable discharge." The plea agreement stated that if the "mandatory

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ and the Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] The second assignment of error is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[3] The parties stipulated that 357 of those "were unique, nonduplicate image and video files."

punitive separation is found to be invalid, based on relevant rules, law, or case law, that provision [relating to the dishonorable discharge] shall be severed from this plea agreement and shall not affect the binding nature and enforceability of the other provisions contained" therein.

The military judge discussed the plea agreement with Appellant. The military judge first referenced the minimum and maximum confinement that may be adjudged pursuant to the plea agreement.[4] Then, the military judge pointed out that the paragraph regarding the dishonorable discharge "binds the court with regard to judicial discharge action." The military judge further highlighted that the agreement created a minimum punishment that was not required by law based on the offenses. Appellant agreed with the military judge's assessment of the agreement and confirmed he was satisfied with his military defense counsel, who also signed the agreement. The military judge did not specifically address the clause in the plea agreement which referenced what would happen if the mandatory punitive separation is found to be invalid. Appellant refers to this clause of the plea agreement as the "severability clause."

## II. DISCUSSION

### A. Plea Agreement to Adjudge a Dishonorable Discharge

Appellant argues the term of the plea agreement requiring a dishonorable discharge should be severed from the plea agreement in accordance with its "severability clause" because it is contrary to public policy. Appellant argues that the "mandatory dishonorable discharge" term "hollowed out the presentencing proceeding and deprived [ ] Appellant of his opportunity to secure a fair and just sentence." We disagree and find no relief is warranted.

#### 1. Law

We review questions of interpretation of plea agreements de novo, as such are questions of law. *See United States v. Lundy,* 63 M.J. 299, 301 (C.A.A.F. 2006) (citation omitted); *United States v. Cron*, 73 M.J. 718, 729 (A.F. Ct. Crim. App. 2014) (citing *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999)). The standard is the same in our assessment of whether a plea agreement's terms violate the Rules for Courts-Martial.

The Military Justice Act of 2016, enacted through the National Defense Authorization Act for Fiscal Year 2017,[5] brought several changes to the

---

[4] The plea agreement required a cumulative sentence to confinement for all charges and specifications to which Appellant pleaded guilty be a minimum of three years and a maximum of six years. We discuss this issue in Section C, *infra*.

[5] Pub. L. No. 114-328, §§ 5001-5542, 130 Stat. 2943 (23 Dec. 2016).

military justice system. One change included an entirely new article, Article 53a, UCMJ, 10 U.S.C. § 853a.[6] This article, titled *Plea agreements*, explains that an accused and convening authority may enter into an agreement over various matters, to include "limitations on the sentence that may be adjudged for one or more charges and specifications." Article 53a(a)(1)(B), UCMJ, 10 U.S.C. § 853a(a)(1)(B).

The President implemented Article 53a, UCMJ, in Rule for Courts-Martial (R.C.M.) 705, also titled *Plea agreements*. Plea agreements may include promises by convening authorities to limit the sentence which may be adjudged. R.C.M. 705(b)(2)(E). These may include a limitation on the maximum punishment which may be imposed, a limitation on the minimum punishment which may be imposed, or both. R.C.M. 705(d)(1).[7] An accused or the Government may propose, or a convening authority may counteroffer, any term or condition not prohibited by law or public policy. R.C.M. 705(e)(1), 705(e)(3)(A).

"Subject to such limitations as the Secretary concerned may prescribe, an accused and the convening authority may enter into a plea agreement in accordance with this rule." R.C.M. 705(a). The parties can agree to a limit on the maximum and minimum amount of punishment that can be adjudged by the court-martial. *See* R.C.M. 705(d)(1). The Secretary of the Air Force prescribed limitations on plea agreement terms in a duly published Department of the Air Force instruction, prohibiting any plea agreement which "includes an exact agreed[-]upon term of confinement (e.g., no more than one year confinement and no less than one year confinement) . . . ." Department of the Air Force Instruction (DAFI) 51-201, *Administration of Military Justice*, ¶ 12.9.2.2 (18 Jan. 2019, as amended by AFGM 2021-02, 15 Apr. 2021); *see also* Department of the Air Force Policy Directive 51-2, *Military Justice and Other Criminal Proceedings*, ¶ 2.15 (21 Jun. 2021) (where convening authority and accused will not enter a plea agreement for specific agreed-upon term of confinement).[8]

---

[6] Prior to the creation of this article, the UCMJ did not contain any provisions related to such agreements. Rather, the *Manual for Courts-Martial*'s guidance on pretrial agreements was found solely in the Rules for Courts-Martial. *See* R.C.M. 705, *Pretrial agreements*, *Manual for Courts-Martial, United States* (2016 ed.).

[7] R.C.M. 705(d)(2) addresses plea agreement limitations on confinement and fines, while R.C.M. 705(d)(3) explains that a plea agreement "may include a limitation as to other authorized punishments as set forth in R.C.M. 1003." R.C.M. 1003(b)(8), in turn, discusses punitive separations which may be adjudged by a court-martial.

[8] This was the applicable paragraph that was in effect when Appellant signed the plea agreement. It has since been changed and it is likely to be changed in the future. *See* DAFI 51-201, ¶ 17.6.2 (14 Apr. 22).

"If a plea agreement exists, the military judge shall require disclosure of the entire agreement before the plea is accepted." R.C.M. 910(f)(3). "If a plea agreement contains limitations on the punishment that may be imposed, the court-martial . . . shall sentence the accused in accordance with the agreement." R.C.M. 910(f)(5).

"To ensure that the record reflects the accused understands the pretrial agreement [or plea agreement] and that both the Government and the accused agree to its terms, the military judge must ascertain the understanding of each party during the inquiry into the providence of the plea." *Cron*, 73 M.J. at 729 (quoting *United States v. Smith*, 56 M.J. 271, 272–73 (C.A.A.F. 2002)).

A military judge must reject any plea agreement which "is prohibited by law" or "is contrary to, or is inconsistent with, a regulation prescribed by the President with respect to terms, conditions, or other aspects of plea agreements." Articles 53a(b)(4) and 53a(b)(5), UCMJ, 10 U.S.C. §§ 853a(b)(4), (5). "To the extent that a term in a pretrial agreement violates public policy, it will be stricken from the pretrial agreement and not enforced." *United States v. Edwards*, 58 M.J. 49, 52 (C.A.A.F. 2003) (citing R.C.M. 705(c)(1)(B)[9]) (additional citation omitted).

"In sentencing an accused under [Article 53, UCMJ], a court-martial shall impose punishment that is sufficient, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces . . . ." Article 56(c)(1), UCMJ, 10 U.S.C. § 856(c)(1). Pretrial agreements or plea agreements which have the effect of transforming sentencing proceedings into "an empty ritual" are impermissible. *See, e.g.*, *United States v. Davis*, 50 M.J. 426, 429 (C.A.A.F. 1999) (quoting *United States v. Allen*, 25 C.M.R. 8, 11 (C.M.A. 1957)) (describing this premise as a "fundamental principle" in military jurisprudence). "A term or condition in a plea agreement shall not be enforced if it deprives the accused of . . . the right to complete presentencing proceedings" and "the complete and effective exercise of post-trial and appellate rights." R.C.M. 705(c)(1)(B).

"A [pretrial agreement] creates a constitutional contract between the accused and the convening authority wherein the accused agrees to waive constitutional rights in exchange for a benefit." *Cron*, 73 M.J. at 729 (citation omitted). "However, due process concerns outweigh the contract principles as 'the [G]overnment is bound to keep its constitutional promises.'" *Id.* (citation omitted). "To that end, a provision that denies the accused a fair hearing or otherwise 'substitutes the agreement for the trial, [thereby] render[ing it] an empty ritual' violates public policy." *Id.* (alterations in original) (citations omitted).

---

[9] *Manual for Courts-Martial, United States* (2000 ed.).

"It is the military judge's responsibility to police the terms of pretrial agreements to insure [sic] compliance with statutory and decisional law as well as adherence to basic notions of fundamental fairness." *Id.* (quoting *United States v. Riley*, 72 M.J. 115, 120 (C.A.A.F. 2013)).

"This court has adopted the principle that terms in a [pretrial agreement] are contrary to public policy if they 'interfere with court-martial fact-finding, sentencing, or review functions or undermine public confidence in the integrity and fairness of the disciplinary process.'" *United States v. Hoard*, No. ACM S32424, 2018 CCA LEXIS 49, at *8 (A.F. Ct. Crim. App. 31 Jan. 2018) (unpub. op.) (quoting *United States v. Raynor*, 66 M.J. 693, 697 (A.F. Ct. Crim. App. 2008)).

This court has found that a "plea agreement provision requiring a military judge or court members to sentence [an a]ppellant to a bad-conduct discharge" did not violate the United States Constitution, UCMJ, or public policy. *United States v. Geier*, No. ACM S32679 (f rev), 2022 CCA LEXIS 468, at *13 (A.F. Ct. Crim. App. 2 Aug. 2022) (unpub. op.), *rev denied*, 83 M.J. 86 (C.A.A.F. 2022).

**2. Analysis**

The question for our determination is whether Appellant's plea agreement provision requiring a minimum sentence requirement of a dishonorable discharge was prohibited by law or prohibited by public policy. We determine it was not.

### a. Prohibited by Law

We begin by determining whether a plea agreement clause requiring a dishonorable discharge is prohibited by law. As a result of the Military Justice Act of 2016, plea agreements may now include provisions to limit the sentence which may be adjudged to include a maximum and a *minimum* punishment which may be imposed, or both. R.C.M. 705(d)(1). Both the convening authority and Appellant agreed to a minimum punishment that included a dishonorable discharge. This agreement is now permissible pursuant to R.C.M. 705(d)(1).

Therefore, Appellant's plea agreement provision requiring a minimum sentence requirement of a dishonorable discharge is not prohibited by law; instead, it is a permitted term allowed by R.C.M. 705(d)(1).

### b. Prohibited by Public Policy

Despite it being permissible under the new R.C.M. 705 to have a limitation on the minimum punishment in a plea agreement, Appellant claims that his plea agreement mandating a dishonorable discharge "hollowed out" the presentencing proceeding and deprived him of his opportunity to secure a fair and just sentence and was therefore against public policy. Appellant raises his claims by addressing legislative intent and sentence authority discretion and

directs the court's attention to our sister service's opinion in *United States v. Libecap*, 57 M.J. 611 (C.G. Ct. Crim. App. 2002).

### i) Sentence minimums in plea agreements

Appellant first argues Congress chose not to make the offenses of which Appellant was convicted carry a "mandatory dishonorable discharge," therefore the plea agreement to a dishonorable discharge violates public policy. *See* Article 56(b), UCMJ, 10 U.S.C. § 856(b) (setting forth offenses which carry sentence minimums). Appellant argues "statutes codified by the legislature and rules enacted pursuant to those laws by the executive are *public policy*." Therefore, Appellant claims public policy dictates plea agreements may not mandate a dishonorable discharge for non-listed offenses.

As the military judge pointed out in his discussion with Appellant, the plea agreement clause requiring a dishonorable discharge adds a minimum sentence when one does not exist under the law. The military judge ensured Appellant realized he would be accepting a sentence term not required by law. While additional changes to the Military Justice Act of 2016 included minimum sentences for certain offenses, we reject Appellant's suggestion that because no minimum sentence exists for Appellant's offenses under law, it is impermissible to have a minimum sentence in a plea agreement. We are not convinced Congress intended to limit plea agreements for offenses they did not list as having mandatory minimums.

Appellant and the convening authority had more flexibility in plea agreement terms than they would have if Congress had prescribed a sentence minimum for Appellant's offenses. Appellant and the convening authority agreed to minimum and maximum sentence terms based on the facts, circumstances, and offenses in Appellant's case. The sentencing authority was aware of and bound by those terms, yet still had a range of sentencing elements to choose from before deciding on a final sentence.

R.C.M. 705(a) states, "Subject to the limitations as the Secretary concerned may proscribe, an accused and the convening authority may enter into a plea agreement in accordance with this rule." The Secretary of the Air Force provided a specific prohibition on plea agreements involving an exact term of *confinement*. *See* DAFI 51-201, ¶ 12.9.2.2. Notably, there is no prohibition on agreeing to a particular punitive discharge, and we do not find that public policy prohibited doing so in this case.

### ii) Sentencing authority's discretion

To further his public policy argument, Appellant asks this court to find that the dishonorable discharge clause violates public policy because it "prevents the sentencing authority from adjudging—*in its sole discretion*—a punishment that is *sufficient, but not greater than necessary*," and therefore is inconsistent

with the mandate of Article 56(c), UCMJ, 10 U.S.C. § 856(c)(1). (Second emphasis added). Appellant's argument implies that no minimum sentence could be agreed to in a plea agreement, because doing so would take away the sentencing authority's *sole discretion* to determine what is both sufficient and necessary.

First, we find no "sole discretion" requirement written into Article 56(c), UCMJ. Any plea agreement with a limitation on sentence by its nature removes some of the sentencing authority's discretion. While the sentencing authority's minimum and maximum sentence options were limited by the plea agreement—instead of limited solely by statute and executive order—the military judge still had "sole discretion" to determine what punishment is sufficient and necessary considering the nature and the circumstances of the offense, the impact of the offense, and the need for the sentence to accomplish other requirements in Article 56, UCMJ.[10]

Next, our military justice system is evolving, and new sentencing proceedings are different from previous practice. Rule for Courts-Martial 705(d)(1) was re-written to allow, in part, plea agreements to contain minimum punishments, along with maximum punishments. "The fact that military justice evolves is not . . . against public policy." *United States v. Rivero*, 82 M.J. 629, 635 (N.M. Ct. Crim. App. 2022) (finding that appellant's plea agreement punishment limitations did not render sentencing proceedings meaningless, and therefore did not violate public policy), *rev. denied*, 83 M.J. 35 (C.A.A.F. 2022). Appellant exercised a relatively new option to agree to a minimum sentence in exchange for other terms in the plea agreement. Appellant was free to not sign the plea agreement. Appellant and the convening authority were also free to agree to other factors such as stipulated facts and pleas to various offenses. Even having signed the agreement, Appellant was able to inform the sentencing authority's decision-making. The sentencing proceeding provided Appellant an opportunity to put forward evidence in mitigation and extenuation, call witnesses, and provide argument, including whether any sentence component was appropriate. Additionally, the military judge still had latitude with other

---

[10] Article 56(c)(1)(C), UCMJ, indicates:

> a court-martial shall impose punishment . . . taking into consideration the need for the sentence—(i) to reflect on the seriousness of the offense; (ii) to promote respect for the law; (iii) to provide just punishment for the offense; (iv) to promote adequate deterrence of misconduct; (v) to protect others from further crimes by the accused; (vi) to rehabilitate the accused; and (vii) to provide, in appropriate cases, the opportunity for retraining and return to duty to meet the needs of the service.

10 U.S.C. § 856(c)(1)(C).

punishment options, to include the term of confinement between three and six years.

Given all the options still available to Appellant and the sentencing authority, the plea agreement in this case did not preclude the sentencing authority's ability to determine a sentence that is sufficient and necessary, but not greater than necessary, to promote justice and to maintain good order and discipline in the armed forces, taking into consideration other aspects of Article 56, UCMJ.

Our conclusion is not novel. In *Geier*, this court found a plea agreement provision requiring the military judge to adjudge a bad-conduct discharge did not violate the appellant's constitutional or other rights. *Geier*, unpub. op. at *13; *see also United States v. Walker*, No. ACM S32737, 2023 CCA LEXIS 355, at *2 (A.F. Ct. Crim. App. 21 Aug. 2023) (unpub. op.) (finding no error in a plea agreement term requiring the military judge to adjudge a bad-conduct discharge).

### iii) United States v. Libecap

Appellant points to *United States v. Libecap* to show how the United States Coast Guard Court of Criminal Appeals (CGCCA) rejected a provision of a pretrial agreement where an appellant agreed to request the military judge impose a bad-conduct discharge. Appellant asks us to apply the CGCCA's analysis to Appellant's case. *Libecap* is not binding on this court; nonetheless, we will address Appellant's arguments.

The court in *Libecap* expressed concerns that a requirement in the pretrial agreement that the accused must *request* a bad-conduct discharge would "create the impression, if not the reality, of a proceeding that was little more than an empty ritual . . . with respect to whether a punitive discharge *should be* imposed." 57 M.J. at 616 (emphasis added).

Appellant argues that *Libecap* provides helpful insight because the CGCCA found the request for a punitive discharge offended due process by curtailing complete presentencing proceedings. We do not apply the reasoning in *Libecap* to this case for several reasons. First, *Libecap* was decided before the President issued an executive order which, in part, changed R.C.M. 705(d)(1), allowing agreements for minimum sentences and requiring full disclosure of any sentence limitations prior to the sentencing authority's determination of a sentence. *See* Executive Order 13,825, Annex 2, § 2, 83 Fed. Reg. 9889, 9966–9967 (1 Mar. 2018). Therefore, the complete sentencing proceeding envisioned in *Libecap*, where the military judge was not aware of the sentence limitations until after sentence was announced, would be different than a complete sentencing proceeding today.

Additionally, the court in *Libecap* determined that the appellant's request for a bad-conduct discharge undercut any other efforts at trial to argue a punitive discharge was undeserved. 57 M.J. at 615. The court further determined that R.C.M. 705(c)(1)—as it read at that time—prohibited the provision of the pretrial agreement requesting the bad-conduct discharge, because in CGCCA's view, it negated the value of putting on a defense sentencing case, which deprived the accused of a complete sentencing proceeding. *Id.* at 616.

In addition to being non-binding on this court, *Libecap* is not particularly helpful given the issue was a "request" for a particular sentence component. We can distinguish a *request* for a punitive discharge, as described in *Libecap*, from Appellant's *agreement* to a punitive discharge. The former meant that defense counsel would not be able to argue forcefully for a sentence that did not include a punitive discharge. *Id.* at 617. Affirmatively requesting a punitive discharge may give the impression that the defense counsel and the accused agreed the accused deserved a punitive discharge and that it was merited by the facts and circumstances of the offense. In contrast, here *agreeing* to a punitive discharge does not require an expression or argument of outward support for that punishment; it merely establishes Appellant is willing to accept the specified punishment in return for a favorable aspect of the plea agreement.[11]

In conclusion, Appellant's plea agreement term regarding a dishonorable discharge was not prohibited by law or public policy. It did not deprive Appellant of his opportunity to secure a fair and just sentence, nor did it render the sentencing proceeding an "empty ritual." Therefore, no relief is warranted.

## B. Sentence Appropriateness

Appellant contends his sentence is inappropriately severe. He claims the military judge's experience in federal courts led to his sentence to confinement being more like those in civilian courts and out of line with other sentences in military cases. Appellant points out that under 18 U.S.C. §§ 2252A(a)(2) and (b)(1), the sentencing range for distribution of child pornography is 5 to 20 years. Appellant also claims that the sentence was inappropriately severe based on the offender and the offenses. We do not find Appellant's sentence to be inappropriately severe.

---

[11] Although not cited by Appellant, we also considered *United States v. Soto*, 69 M.J. 304 (C.A.A.F. 2011), on this issue. For the reasons set forth in our analysis of *Libecap*, we similarly conclude that the CAAF's decision in *Soto* does not foreclose the propriety of a mutually agreed upon plea agreement term imposing a punitive discharge as a component of the adjudged sentence.

### 1. Additional Background

In accordance with his plea agreement, Appellant was sentenced by a military judge. The military judge was a reserve member of the United States Air Force, who worked as a civilian at the United States Attorney's Office for the Eastern District of North Carolina. During voir dire, trial defense counsel questioned the military judge about his role as an Assistant United States Attorney. The military judge described his role as a criminal deputy chief in the national security section of the U.S. Attorney's Office where he worked. He said that child pornography cases are not the mission of his section, but if other sections are overburdened, their cases, to include child pornography cases, may fall to attorneys he oversees in the national security section. When trial defense counsel asked the military judge if he had any concerns that he would give more deference to the Government's argument than he would to the Defense's argument in this case, the military judge replied "no."

Trial defense counsel went on to question the military judge about the federal sentencing guidelines for federal cases, and asked if his knowledge and in-depth use and interaction with such guidelines would play any role in his determination of an appropriate sentence in this case. The military judge replied that the federal sentencing guidelines were "inapplicable." Further voir dire by the trial defense counsel confirmed that the military judge would be able to separate his role as a prosecutor in his civilian job from his role as an unbiased fact finder in the military proceeding. At the end of this questioning, neither party challenged the military judge despite being provided the opportunity.

### 2. Law

We review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citing *United States v. Cole*, 31 M.J. 270, 272 (C.M.A. 1990)). Our authority to determine sentence appropriateness "reflects the unique history and attributes of the military justice system, [and] includes but is not limited to considerations of uniformity and evenhandedness of sentencing decisions." *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citations omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (per curiam) (citations omitted). Although we have great discretion to determine whether a sentence is appropriate, we have no power to grant mercy. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citation omitted).

Military judges are presumed to know the law and to follow it absent clear evidence to the contrary. *United States v. Erickson*, 65 M.J. 221, 225 (C.A.A.F. 2007) (citing *United States v. Mason,* 45 M.J. 483, 484 (C.A.A.F. 1997)).

**3. Analysis**

Appellant has not identified any evidence to support his argument that the military judge improperly allowed his experience as a federal prosecutor and familiarity with federal sentencing guidelines to impact his determination of the sentence. To the contrary, while he was questioned by trial defense counsel during voir dire, the military judge specifically stated that the federal sentencing guidelines did not apply to Appellant's case.

Military judges are presumed to know the law and to follow it absent clear evidence to the contrary. *Mason*, 45 M.J. at 484. We presume that the military judge would not improperly apply federal sentencing guidelines when determining Appellant's sentence in a military court-martial. Appellant claims that his adjudged sentence of 68 months of confinement appears to include application of the federal sentencing guidelines for his offenses, since the federal sentencing guidelines range from 5–20 years of confinement. While Appellant's sentence to confinement may also be within that range, it is within the terms of the plea agreement, which included a minimum term of confinement of three years and a maximum of six years. The military judge ordered a total term of confinement of 68 months, which is four months under six years. We are not convinced the military judge improperly allowed his experience as a federal prosecutor to impact his determination of a sentence.

Furthermore, we do not find Appellant's sentence to be inappropriately severe given Appellant's involvement in actively managing the private chatrooms for members to discuss and share child pornography. He not only possessed and distributed child pornography, he also actively engaged in and at times led implementation of some of the administrative tasks associated with the chatrooms. Considering Appellant, his record of service, his personal circumstances, and the record of trial, we conclude Appellant's sentence to a dishonorable discharge, 68 months' confinement, total forfeiture of pay and allowances, and reduction to the grade of E-1 is appropriate.

**C. Confinement Limits for Enumerated Offenses**

In our review, this court noticed that Appellant's plea agreement did not specify agreed-upon limitations for confinement "for each enumerated offense," as required by DAFI 51-201, ¶ 12.9.2.3, and incorporated by R.C.M. 705(a). While not raised by Appellant, this court recognizes that the military judge should have rejected this plea agreement for failing to specify agreed limitations for confinement for each offense to which Appellant intended to plead guilty.

### 1. Additional Facts

Appellant's plea agreement stated, "I offer to . . . [a]gree to be sentenced by the military judge" alone. It further states,

> In exchange for my plea of guilty to the aforementioned charges and specifications, I agree . . . [to] a cumulative sentence [which] will include a minimum of 3 years of confinement and a maximum of 6 years of confinement . . . .

The minimum and maximum terms of confinement for each offense were not addressed in the plea agreement.

The military judge announced the sentence to confinement as follows:

> As to the Specification of Charge I: 68 months;
>
> Specification 1 of Charge II: 24 months;
>
> Specification 2 of Charge II: 64 months;
>
> Specification 3 of Charge II: 3 months.
>
> All adjudged terms of confinement shall run concurrently to one another thus resulting in a total term of confinement of 68 months.

### 2. Law

"Subject to such limitations as the Secretary concerned may proscribe, an accused and the convening authority may enter into a plea agreement in accordance with this rule." R.C.M. 705(a).

"Military judges adjudge confinement, if any, and fines, if any, for each enumerated offense of which the accused is found guilty." DAFI 51-201, ¶ 12.9.2.3 (citing R.C.M. 1002(d)(2)). "A plea agreement that requires sentencing by a military judge and includes sentencing limitations must specify any agreed-upon limitations regarding confinement and/or fines with each enumerated offense, if any." *Id.*

We review questions of interpretation of plea agreements de novo, as such are questions of law. *See Hunter*, 65 M.J. at 401. "When interpreting pretrial agreements, we consider basic principles of contract law, however contract principles are outweighed by the Constitution's Due Process Clause[12] protections for an accused." *United States v. Brown*, No. ACM 34037, 2002 CCA LEXIS 15, at *4 (A.F. Ct. Crim. App. 10 Jan. 2002) (unpub. op.) (citing *Acevedo*, 50 M.J. at 172).

---

[12] U.S. CONST. amend. V.

### 3. Analysis

Since Appellant's plea agreement required sentencing by military judge alone, it should have specified agreed-upon limitations for confinement for each offense, pursuant to DAFI 51-201, ¶ 12.9.2.3. It did not. The requirements pertaining to plea agreements listed in DAFI 51-201 are the limitations prescribed by the Secretary of the United States Air Force pursuant to R.C.M. 705(a) and, therefore, must be followed. While Appellant's agreement specified a minimum term of confinement and a maximum term of confinement, it ran afoul of the limitation prescribed by the service Secretary and should have been rejected in its current form at the court-martial.

Appellant and the convening authority both signed the plea agreement without agreed limitations for confinement for each offense. While considering basic principles of contract law, it seemed all parties understood the plea agreement when they signed it, and the trial proceedings were sufficient to make sure there was no misunderstanding about the effect of the agreement. The military judge properly sentenced Appellant in accordance with his responsibility under DAFI 51-201, ¶ 12.9.2.3, by adjudging confinement for each "enumerated" offense of which Appellant was found guilty and staying within the range of minimums and maximums for the sentence to confinement. Given that Appellant did not raise this issue at trial, nor on appeal, and this court does not find any material prejudice to Appellant's substantial rights, we find no relief is warranted.[13]

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of the Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED.**



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[13] Article 59(a), UCMJ, 10 U.S.C. § 859(a).